177 N.J. Super. 279 (1981)
426 A.2d 521
HELEN BUTLER, PLAINTIFF-APPELLANT,
v.
ACME MARKETS, INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 20, 1981.
Decided February 5, 1981.
*283 Before Judges MICHELS, KOLE and ARD.
Francis F. Welsh argued the cause for appellant.
Daniel K. Newman argued the cause for respondent (Pantages, Sellar, Richardson, Stuart & Crowley, attorneys; Daniel K. Newman, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiff Helen Butler appeals from a judgment of no cause of action entered by the Law Division in favor of defendant Acme Markets, Inc. (Acme) notwithstanding a jury verdict awarding her damages in the sum of $3,600 for personal injuries sustained as the result of a criminal attack which occurred in defendant's supermarket parking lot.
On the evening of November 11, 1977 plaintiff was shopping at defendant's supermarket, located at the corner of Pine Street *284 and Claremont Avenue in Montclair, New Jersey. After she had finished shopping she left the supermarket with her packages and walked towards her car, which was parked in defendant's lot. She placed her packages on the bumper of her car and proceeded to open the trunk of the car. Suddenly and without warning she was assaulted and her pocketbook stolen. During the course of the assault plaintiff was thrown to the ground and injured. Her assailant was apprehended shortly after the incident.
Plaintiff instituted this action against defendant to recover damages for the personal injuries she sustained as the result of the assault. She contended that defendant was negligent in failing to provide her with a reasonably safe place within which to shop. Specifically, she claimed that defendant (1) failed to warn her and other customers of the danger inherent in using the parking lot at night, in view of the recent prior criminal attacks in and around the supermarket, and (2) failed to provide adequate security to protect her and other customers from such attacks. The building occupied by defendant's supermarket was set back from the street and surrounded by a parking lot. The portion of the parking lot where the assault occurred was in front of the supermarket and was well lighted. The proofs show that over a period of a year there had been approximately seven attacks on defendant's premises. Five attacks were documented by the Montclair Police as having occurred in the parking lot during a four-month period immediately preceding the assault on plaintiff. Defendant, apparently as a result of the problem, had hired local off-duty police officers to act as security guards during the evening hours that the supermarket was open for business. These off-duty security guards were assigned to patrol the supermarket, including the parking lot. However, there was only one security guard employed and on duty at a time. The security guards were hired to prevent shoplifting, to protect its customers and to guard against other criminal activities, such as the passing of bad checks. One of the security guards testified, however, that their primary responsibility *285 was to prevent shoplifting and to protect the premises. On the night that plaintiff was assaulted, the security guard on duty was working inside the supermarket checking for shoplifters. There was no one on duty outside the supermarket or in the parking lot. In addition, there were no signs or warnings alerting plaintiff and other customers to the possibility of attacks.
At the conclusion of the proofs the trial judge reserved decision on defendant's motion for a judgment in its favor and submitted the case to the jury. The judge instructed the jury: (1) to determine whether or not defendant had used reasonable care to see that its business invitees had a reasonably safe place to transact their business, and (2) assuming that it did not, to determine whether defendant's failure to do so was a proximate cause of the injuries sustained by plaintiff. The jury found in plaintiff's favor and awarded her damages in the sum of $3,600. Thereafter, the trial judge set aside the verdict and granted a judgment of no cause for action in favor of defendant, notwithstanding the verdict. While the judge conceded that the "[f]ive previous assaults on the premises gave rise to an inference that some reasonable security measures would be indicated, ...," it nonetheless concluded that plaintiff had failed to prove any appropriate standard as to the adequacy of protection which defendant should have provided. The trial judge concluded that "the jury verdict must have been based upon speculation rather than upon any defined standard, ..." This appeal followed.
The standard for determining a motion for judgment notwithstanding the verdict under R. 4:40-2 is the same as that governing the determination on a motion for involuntary dismissal under R. 4:37-2(b) or a motion for judgment under R. 4:40-1. The test is whether the evidence, together with the legitimate inferences therefrom, could sustain a judgment in favor of the party opposing the motion. If, accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, *286 reasonable minds could differ, the motion must be denied. Dolson v. Anastasia, 55 N.J. 2, 5 (1969). Considering this matter in the light of the foregoing standard, we are satisfied that the trial judge erred in setting aside the verdict in favor of plaintiff and in granting judgment in favor of defendant notwithstanding the verdict.
It is fundamental that negligence is tested by whether the reasonable person at the time and place would recognize and foresee an unreasonable risk or likelihood of harm or danger to others. Braitman v. Overlook Terrace Corp., 68 N.J. 368, 380 (1975); McCabe v. N.J. Turnpike Auth., 35 N.J. 26, 35 (1961); Rappaport v. Nichols, 31 N.J. 188, 201 (1959). The standard of care is the conduct of a reasonable person of ordinary prudence under the circumstances. The standard necessarily imports varying amounts of care in relation to the variable element of risk of harm. The greater the risk, the greater the care required. Ambrose v. Cyphers, 29 N.J. 138, 144 (1959).
The duty owed by the proprietor of premises to which the public is invited for consummation of business with the proprietor, such as the operator of a supermarket, is to exercise reasonable care to see that one who enters his premises upon that invitation has a reasonably safe place to do that which is within the scope of the invitation. Brody v. Albert Lifson & Sons, 17 N.J. 383, 389 (1955); Bohn v. Hudson & Manhattan R. Co., 16 N.J. 180, 185 (1954); Crammer v. Willston Operating Co., Inc., 19 N.J. Super. 489, 490-491 (App.Div. 1952). A proprietor's duty is simply one of due care under all of the circumstances. Bozza v. Vornado, Inc., 42 N.J. 355, 359 (1964); 2 Harper and James, The Law of Torts, § 27.12 at 1487 (1956). That duty is satisfied when the proprietor has used reasonable care to maintain the premises in a reasonably safe condition for use by its customers. This duty of care extended to and encompassed the parking lot defendant maintained and provided for its supermarket customers. See Picco v. Fords Diner, Inc., 113 N.J. Super. 465, 467 (App.Div. 1971); Nelson v. Great Atlantic & Pacific Tea Co., 48 N.J. Super. 300, 305-306 (App.Div. 1958); Atamian v. *287 Supermarkets General Corp., 146 N.J. Super. 149, 155-157 (Law Div. 1976).
The duty of care cast upon defendant included the duty to protect plaintiff and other customers against attacks by providing adequate security guards in and around the supermarket, including the parking lot. The recent attacks in defendant's parking lot carried with them an obvious risk of injury to defendant's supermarket customers. It is a matter of common knowledge that the presence of security guards or other similar personnel in and around an area, such as the supermarket shopping lot here, will have a deterrent effect upon criminal activity. In our view, it is not unreasonable or unfair to require defendant and other supermarket operators furnishing parking facilities to their customers in high crime areas or where, as here, there has been a history of persistent attacks, to provide adequate protection, such as security guards for its customers using the parking facilities.
Goldberg v. Housing Auth. of Newark, 38 N.J. 578 (1962), relied upon to support the judgment in favor of defendant, is readily distinguishable and does not mandate a contrary conclusion. Plaintiff in Goldberg was beaten and robbed by two men while he was delivering milk to a public housing project. The project was owned and operated by a public corporation created by the City of Newark pursuant to the Local Housing Authority Law. While the complaint alleged negligence in general terms, plaintiff's sole theory was that the project owners had a duty to provide police protection. The Supreme Court held, apart from the question of foreseeability, that "the duty to provide police protection is and should remain the duty of government and not of the owner of a housing project." Id. at 592. See Braitman v. Overlook Terrace Corp., supra, 68 N.J. at 379-380. Here, we are not dealing with an owner of a public housing project. We are simply dealing with the proprietor of a supermarket who has extended an invitation to the public to enter its premises for the purpose of doing business. Secondly, the duty to require the owner of a supermarket to provide adequate security personnel *288 to protect customers against criminal attacks in its parking lot is entirely different from the duty sought to be imposed upon the owner of a housing project, consisting of a complex of buildings, which in the Goldberg case housed thousands of people. Finally, the duty to take reasonable security measures to protect the customers in parking their cars is not synonymous with providing the "police protection" that was referred to in Goldberg. See Atamian v. Supermarkets General Corp., supra 146 N.J. Super. at 157-158.
Furthermore, the fact that the risk of harm  the criminal attacks  was attributable to the voluntary acts of third parties who were not under the control of defendant does not of itself preclude liability if the harm was foreseeable and a reasonable person would take precaution to prevent it. Braitman v. Overlook Terrace Corp., supra; Genovay v. Fox, 50 N.J. Super. 538, 550-551 (App.Div. 1958), rev'd on other grounds 29 N.J. 436 (1959). See, also, 2 Restatement, Torts 2d, § 448 (1965). Liability may still be imposed where, such as here, defendant's conduct in failing to provide adequate security guards created circumstances in which the possibility or likelihood of a criminal attack could reasonably have been foreseen or anticipated. The rash of attacks in defendant's parking lot and defendant's employment of security guards, indicating an awareness on its part of the potential for criminal activity on its property, were sufficient for a jury to conclude that a probability or likelihood of continued assaults on customers using the parking lot reasonably could have or should have been foreseen by defendant, and that defendant failed to take reasonable steps to protect its customers from such a risk.
Moreover, we reject defendant's argument that expert testimony was necessary to establish a standard of care as to the adequacy of the measures taken to protect its customers. The average juror was qualified to decide in the circumstances here present whether defendant had exercised reasonable care by employing only one security guard for its entire premises, including the interior of the supermarket building and the parking *289 lot. The known risks of attacks upon customers using the parking lot, the dangers associated with such attacks, and the necessity of providing some degree of protection against such attacks were perfectly apparent and capable of analysis by any juror of ordinary understanding. Expert testimony was not necessary in the particular circumstances present in this case. Black v. Public Service Elec. & Gas Co., 56 N.J. 63, 78-79 (1970).
Finally, we are satisfied from our study of the record that an inference could be drawn by the jury that reasonable security measures would have served as a deterrent to criminal attacks upon customers in defendant's parking lot, and that defendant's failure to take such measures, including the employment of adequate security guards in and around the parking lot, was a substantial contributory factor in the assault on plaintiff. In any event, the question of proximate cause here was clearly for the jury. See Rappaport v. Nichols, supra 31 N.J. at 203; Martin v. Bengue, Inc., 25 N.J. 359, 374 (1957); Vadurro v. Yellow Cab Co. of Camden, 6 N.J. 102, 108 (1950).
Accordingly, the judgment of no cause for action in favor of defendant notwithstanding the verdict is reversed, and the verdict awarding damages to plaintiff in the sum of $3,600 is reinstated.