MERIDETH TAYLOR *et al.*, Plaintiffs-Appellants, *v.* DAVID HOCKER *et al.*, Defendants-Appellees.

Fifth District    No. 80-525

Opinion filed November 9, 1981.

Hunter and Schwartz, of Carbondale, and Harris, Lambert & Wilson, of Marion, for appellants.

Mitchell and Armstrong, Ltd., of Marion, for appellees.

Mr. PRESIDING JUSTICE KASSERMAN delivered the opinion of the court:

Plaintiffs appeal from an order of the circuit court of Jackson County granting defendants' motion for summary judgment pursuant to section 57 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 57). Plaintiffs, Merideth Taylor and Melody Beiler, instituted a negligence action against defendants, David Hocker and Alan Squitieri. The amended complaint alleged that defendants operated the University Mall Shopping Center in Carbondale, Illinois, and that on the evening of September 25, 1976, plaintiffs were assaulted and stabbed by an unknown assailant in the mall's parking lot. The plaintiffs urge that defendants were liable for the harm suffered by plaintiffs as a result of the criminal attack because defendants failed to provide adequate security or sufficient lighting and failed to warn of the danger of being assaulted while on the parking lot.

Defendants moved for summary judgment, and the trial court, after considering the pleadings, depositions, and arguments offered by the parties, concluded that defendants were entitled to judgment as a matter of law and granted defendants' motion for summary judgment. It is from this order that plaintiffs appeal. We affirm.

Plaintiffs' depositions disclosed that on September 25, 1976, at approximately 8 p.m., plaintiffs went shopping at the University Mall,

having parked near the front of the mall's parking area. After about an hour, the plaintiffs returned to their car, and as they were entering the vehicle, a stranger approached them and requested a ride to Southern Illinois University. When the plaintiffs refused, the stranger became more insistent and suddenly became violent. He pulled a knife and began stabbing the plaintiffs. Melody Beiler was stabbed in the chest and back, and Merideth Taylor was stabbed in the back.

Ms. Beiler stated that some lights in the parking area were burned out but that the area was sufficiently lighted that a potential assailant could not hide in the darkness. Ms. Taylor related that there were lights on in the parking lot, and that the darkness did not prevent her from seeing her attacker, but that the lighting seemed dim.

The only other deponent was Philip Favreau, who had managed the mall since it opened on October 30, 1974. He stated that University Mall employed security personnel who patrolled the common area of the mall, including the parking lot. The security employees were hired primarily for traffic and crowd control, but they also handled reported incidents of shoplifting and traffic accidents. The parking lot was also regularly patrolled by officers from the Carbondale Police Department.

Mr. Favreau further stated that the parking lot was well lighted. He related that the only criminal activities he was aware of occurring at the mall were shoplifting incidents; however, he recalled an occasion in which the manager of the J.C. Penney store, contiguous to but not a part of the mall, was struck by an irate customer at the J.C. Penney store on September 17, 1976.

The lease between the defendants and the store owners, which was made part of the defendants' answers to interrogatories, provided, in part, as follows:

> "(i) *Common Area Charge.* In advance payable in equal monthly installments * * * an annual sum * * * shall * * * be applied toward the TENANT'S proportionate share of all costs and expenses * * * paid or incurred by LANDLORD in operating, managing, cleaning, protecting, equipping, lighting, repairing, replacing and maintaining malls, whether open or enclosed, walkways, corridors, public areas, common restrooms and meeting areas, vehicle parking areas, drive-ways and other common areas * * * within the Shopping Center. Such cost and expense shall include, but not be limited to, the cost of: * * * maintaining, repairing, and replacing, cleaning, lighting, snow and ice handling and line painting of all vehicle parking areas and other outdoor Common Areas * * * and maintaining security personnel in, on and about the Common Areas, including offsite traffic control on streets adjacent or contiguous to the Shopping Center * * *."

The plaintiffs filed a bill of particulars which suggested that defendants were put on notice of the likelihood of criminal activity by virtue of their awareness of the incident involving the manager of the J.C. Penney store on September 17, 1976, and another incident in which Mrs. Colleen Battaglia "may have been abducted" from the J.C. Penney parking lot on or about July 9, 1973, which was prior to the opening of University Mall. Plaintiffs' counsel also submitted an affidavit stating that he intended to introduce evidence of the Carbondale Police Department reports of crime which occurred at University Mall between March and September, 1976. An attached exhibit indicated that the mall had numerous shoplifting incidents, 19 thefts from automobiles, four automobile thefts, and one bicycle theft.

After considering the pleadings, the depositions, and the affidavits, the trial court granted defendants' motion for summary judgment, and this appeal resulted.

It is recognized that summary judgments should be rendered with great caution; however, where a plaintiff fails to establish an element of the cause of action through the pleadings, depositions, admissions, and affidavits on file, summary judgment for the defendant is proper. (*Schoondyke v. Heil, Heil, Smart & Golee, Inc.* (1980), 89 Ill. App. 3d 640, 411 N.E.2d 1168; *Joiner v. Benton Community Bank* (1980), 82 Ill. 2d 40, 411 N.E.2d 229.) It is elementary that there can be no liability in tort for negligence unless defendant has breached a duty owed to the plaintiff. (*Boyd v. Racine Currency Exchange, Inc.* (1973), 56 Ill. 2d 95, 306 N.E.2d 39.) Therefore, the primary question presented in this appeal is whether defendants had sufficient notice or knowledge of previous criminality in the area so as to give rise to a duty to protect the plaintiffs from criminal attacks of third parties. The question of whether the owners of a shopping center owed a duty to protect a patron from criminal attack was addressed by the court in *O'Brien v. Colonial Village, Inc.* (1970), 119 Ill. App. 2d 105, 255 N.E.2d 205. In rejecting plaintiff's contention that the daily city-like presence of thousands of people on the premises raised a duty to anticipate and guard against criminal action, the court stated:

"* * * [T]he liability at common law is not that of an insurer, but is based on fault. [Citations.] Obviously, every risk which is foreseeable does not create a duty to an injured person. In addition, the likelihood of injury, the magnitude of the burden of guarding against it, and the desirability of placing the burden upon a defendant must also be considered. [Citations.]" 119 Ill. App. 2d 105, 107, 255 N.E.2d 205, 207. See also Annot., 93 A.L.R.3d 999 (1979); Restatement (Second) of Torts §344, comment *f* (1965).

Although we are aware of no Illinois case that has considered the precise issue presented by the case at bar, the court in *Meyer v. Riverview*

*Park Co*. (1950), 342 Ill. App. 218, 96 N.E.2d 379, stated that the prerequisite of a good complaint in similar cases is that it must allege not only danger of assault but that the defendant had notice of such danger and reasonably should have anticipated it. *Cf. Altepeter v. Virgil State Bank* (1952), 345 Ill. App. 585, 104 N.E.2d 334; *Moore v. Yearwood* (1960), 24 Ill. App. 2d 248, 164 N.E.2d 215.

Other jurisdictions, however, have had occasion to consider factual circumstances similar to the case at bar. It has been held that general allegations that various other crimes had been committed on a shopping center's premises are not sufficient to allow the case to go to the jury. (*Cornpropst v. Sloan* (1975), 528 S.W.2d 188.) At least one jurisdiction, however, has suggested that awareness of thefts occurring on the premises gives rise to a jury question on the duty to protect customers from attacks by third parties. *Morgan v. Bucks Associates* (E.D. Pa. 1977), 428 F. Supp. 546.

A case closely resembling the situation present herein is *Shipes v. Piggly Wiggly St. Andrews, Inc.* (1977), 269 S.C. 479, 238 S.E.2d 167, decided by the Supreme Court of South Carolina. There, defendant's motion for a directed verdict was granted in a suit filed by a plaintiff who was injured in an attack by third persons in a super market parking lot. The court held that where no violent crimes were shown to have been committed in the area of the store and the manager of the store was aware only of shoplifting and thefts being committed on the premises, the store owner was not under a duty to protect its customers against criminal attacks because the store owner did not know or have reason to know of such criminal attacks. We find the reasoning in *Shipes* persuasive and conclude that the rule announced therein should apply in the instant case.

Here, the plaintiffs have shown only one incident of violence, and that involved an irate customer striking the manager of the J.C. Penney store at the store located next to University Mall. Although police reports indicate that there were occurrences of shoplifting and thefts in and on the premises, we reject plaintiffs' argument that knowledge of crimes against property, commonplace in all shopping centers, is sufficient to give rise to a duty to protect customers from assaults by third persons. To hold otherwise would place liability on shopping centers regardless of the foreseeability. In this regard, liability should be imposed "only if the defendant is negligent in not guarding against the possible crime—which is to say, if the foreseeable risk is an unreasonable one, in the light of the burden of taking precautions." Prosser, Torts §33, at 175-76 (4th ed. 1971).

In light of these relevant concerns, we conclude that defendants in the case at bar did not owe a duty to the plaintiffs to take security precautions against or warn of violent attacks of third persons in the shopping center parking lot. Our holding in this regard does not suggest that

shopping center owners or operators may never be charged with a duty to protect customers, and we would here note that where there are factual allegations indicating an awareness on the part of the owners or operators of a history of assaults in the parking facilities provided to business invitees (*Butler v. Acme Markets, Inc.* (1981), 177 N.J. Super. 279, 426 A.2d 521), or where the facts suggest notice that the area is frequented by undesirable characters (*Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 50 N.E.2d 497), liability may arise and summary judgment would be inappropriate. Such evidence, however, is not present in the case before us.

The fact that plaintiffs allege a duty to provide sufficient lighting does not alter the result. Assuming, without deciding, that defendants owed a duty to maintain adequate lighting to deter crime in the parking lot, there is no showing in this case that any breach of such duty existed. (See *Shipes v. Piggly Wiggly St. Andrews, Inc.* (1977), 269 S.C. 479, 485, 238 S.E.2d 167, 169.) Moreover, the claimed lighting inadequacy does not appear to be either the cause in fact of the criminal attack (see *Shaner v. Tucson Airport Authority, Inc.* (Ariz. App. 1977), 117 Ariz. 444, 573 P.2d 518), or the proximate and legal cause of the plaintiffs' injuries. (See *Altepeter v. Virgil State Bank*; *Cornpropst v. Sloan.*) The instant case differs from *Kenny v. Southeastern Pennsylvania Transportation Authority* (3d Cir. 1978), 581 F.2d 351, where plaintiff established that there were no lights in the area of the train platform where she was attacked. Here, the plaintiffs' depositions conclusively establish that the attack in the instant case did not result because the assailant was lurking in the darkness created by poor lighting and indicates that the lighting did not increase the likelihood, nor contribute to the commission, of the crime. There is an insufficient showing of any lighting inadequacy in the mall's parking lot and no allegation whatsoever that defendants had notice or knowledge of insufficient lighting. Under these circumstances, we will not disturb the summary judgment entered by the trial court.

Finally, relying on *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 399 N.E.2d 596, the plaintiffs maintain that defendants had a duty based upon a voluntary contractual undertaking. In *Pippin*, our supreme court held that a security services corporation was liable for harm suffered by criminal attacks on premises owned and operated by the Chicago Housing Authority where the corporation specifically agreed to provide " ' * * * protective services for the purpose of guarding [the Authority's] properties * * * and the protection of persons thereon.' " (*Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 207, 399 N.E.2d 596, 599.) Here, the plaintiffs' claim is based upon the "Common Area Charge" clause of the lease defendants entered into with the lessees of the various stores in the shopping center. This provision placed

responsibility upon defendants for maintaining security personnel in, on, and about the Common Areas. It is evident that the undertakings alleged in *Pippin* and in the present case are dissimilar. In the instant case, when broadly interpreted, the lease provision relied upon by the plaintiffs does not, as in *Pippin*, provide for the protection of third persons from criminal attacks.

In *Stelloh v. Cottage 83* (1964), 52 Ill. App. 2d 168, 201 N.E.2d 672, the court held plaintiff's complaint failed to state a cause of action where it did not show on its face that the negligence alleged fell within the scope of an alleged duty. The court there stated:

> "The undertaking alleged (that defendant's private police would give a special and added protection to the security and safety of its tenants) cannot reasonably be construed as insurance of absolute protection against crime. Even the assignment of an armed personal bodyguard with full police authority (which defendant did not have) could not guarantee such a result." (*Stelloh v. Cottage 83* (1964), 52 Ill. App. 2d 168, 171, 201 N.E.2d 672, 673.)

The reasoning expressed in *Stelloh* is applicable to the case at bar. The fact that defendants agreed to provide security personnel under a common areas care and maintenance clause found in a standard form lease cannot be construed as a voluntary undertaking to protect all shopping center customers from criminal attack. We decline to imply such a burdensome duty upon defendants under the provisions of their lease with the store owners.

For the foregoing reasons, the judgment of the circuit court of Jackson County is affirmed.

Affirmed.

HARRISON and WELCH, JJ., concur.