MICHAEL RUSSELL, a Minor, by his mother, Michelle Russell, Plaintiff-Appellant, v. BAKKIAM SUBBIAH, Defendant-Appellee.

Third District   No. 3—85—0706

Opinion filed November 7, 1986.

BARRY, J., dissenting.

Donald A. Shapiro, of Donald A. Shapiro, Ltd., of Chicago (Ardwin E. Boyer, of counsel), for appellant.

Samuel S. McHard, of Katz, McAndrews, Durkee, Balch & Lefstein, P.C., of Rock Island (Lori R. Lefstein, of counsel), for appellee.

JUSTICE WOMBACHER delivered the opinion of the court:

The defendant, Dr. Bakkiam Subbiah, was charged with negligence in his care of the plaintiff, Michael Russell, who at the age of two years suffered from what was ultimately determined to be a spinal cord tumor. The plaintiff alleged that Dr. Subbiah's original misdiagnosis of his condition as Guillain-Barre Syndrome, and the resulting delay in rendering the proper treatment for the tumor, caused increased injury to the plaintiff's right leg and prolonged his recovery period.

The trial court granted summary judgment for the defendant on the ground that the plaintiff's evidence fell short of the preponderance needed at trial to establish that the delay proximately caused the plaintiff's injury. The plaintiff claims that he 'established proximate cause through the deposition testimony and affidavit of his expert, Dr. Peter Heydemann. We find the plaintiff's position to be without merit, and affirm the trial court's ruling.

For the purposes of this opinion, it will not be necessary to delve into the details of the defendant's treatment of Michael Russell. There is no issue with respect to the matter of Dr. Subbiah's alleged deviation from applicable standards of medical care.

The focus of the debate as to whether the plaintiff's expert did or did not establish proximate cause is upon the following excerpt from Dr. Heydemann's deposition:

"MR. McHARD (defendant's attorney): So, to clarify your opinion that—are you saying that you are able to state with a reasonable degree of medical certainty that the delay of diagnosis of this spinal cord tumor caused Michael Russell to have a longer period of recovery in his right leg?

DR. HEYDEMANN: That is hard to state with certainty, given all the variables that are involved. I think, you know, as far as general principle goes, I think it's a contributing factor.

MR. McHARD: But I'm asking for an opinion based on a reasonable degree of medical certainty.

DR. HEYDEMANN: The answer is I cannot say that, no."

The plaintiff maintains that Dr. Heydemann's theory of the case was that the tumor, itself, was the *most* direct cause of the injury, but that the delay in diagnosis was a contributing factor. At one point in the expert's deposition, however, the following exchange took place:

"MR. McHARD: Do you have an opinion based upon a reasonable degree of medical certainty as to whether anything Dr. Subbiah did or failed to do from 6/17/84 until the child's transfer to Iowa City caused proximately any of those extended re-

habilitation problems with the right leg?

DR. HEYDEMANN: What does 'proximately' mean?

MR. McHARD: Direct, as the cause that you can identify.

DR. HEYDEMANN: No.

MR. McHARD: No, you don't have an opinion, or no, you do have an opinion and there was none?

DR. HEYDEMANN: The opinion is that it did not cause the problems of the right leg directly."

■■ The plaintiff complains that counsel for the defendant misled the witness by giving an inaccurate definition of proximate cause. He cites Illinois Pattern Jury Instruction, Civil, No. 15.01 (2d ed. 1971), which defines proximate cause as "any cause which, in the natural or probable sequence, produced the injury complained of. It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury."

By limiting proximate cause to the "direct" cause of the injury, defendant's counsel incorrectly implied that concurring or contributing causes were excluded from the definition. However, a complete reading of all of the excerpts from Dr. Heydemann's deposition which were included in the record leaves no room for doubt as to the expert's opinion that the delay in diagnosis was, to a reasonable degree of medical certainty, a contributing factor in the plaintiff's prolonged recovery.

On the other hand, the doctor was clearly unwilling to express an opinion as to the extent of the resulting increase in damage to the plaintiff's spinal cord which was attributable to the delay, as opposed to the tumor itself, or the precise length of time by which the child's recovery was extended because of the defendant's negligence. However, this by no means impaired his testimony that the delay in diagnosis was causally related to the plaintiff's injury.

The following excerpts from the deposition are typical of the doctor's responses:

"MR. McHARD: Based on a reasonable degree of medical certainty, what, if any, damage resulted to Michael Russell as a result of not performing a myelographic study or a CT scan on the 27th, in fact, delaying it until the 3rd before the 4th of July?

DR. HEYDEMANN: I think the damage is in the area of continued compression and presumed continued myelopathy, which is one of the terms of compression of the spinal cord, and as part of that probably continued ischemia, which means

somewhat diminished blood flow to the area of the spinal cord.

MR. McHARD: Are those opinions based on a reasonable degree of medical certainty?

DR. HEYDEMANN: I think this is by and large prevailing medical opinions [sic] of what's happening in an area of pressure in the spinal cord caused by an expanding tumor. Now I think the part that becomes less certain is how much increased insult to his spinal column was this—not to his spinal column, to his spinal cord—and how long-lasting would such effects be.

MR. McHARD: When you say those are uncertain, you're saying you're not able to state with a reasonable degree of medical certainty what that impact is; is that correct?

DR. HEYDEMANN: I think it would prolong recovery, but I can't tell you precisely how long that would be.

\* \* \*

MR. McHARD: So there wouldn't have been any neurological damage that could have reasonably been prevented by any earlier diagnosis; isn't that correct?

DR. HEYDEMANN: Well, I think that the length of time that the spinal cord is undergoing the squeezing does have some bearing on the length of disability. And so the answer to your question is I think that the two weeks thereafter is causing more injury, the delay of two weeks is causing more injury at that point.

MR. McHARD: But based on a reasonable degree of medical certainty, you can't tell how much injury is being caused?

DR. HEYDEMANN: Cannot."

Seeking to clarify any perceived weakness in Dr. Heydemann's testimony, at the hearing on the defendant's motion for summary judgment the plaintiff submitted an affidavit from the doctor. In pertinent part, it states that the tumor itself was "the most direct and immediate cause" of the damage to the plaintiff's right leg, but that Dr. Subbiah's improper delay in diagnosing the tumor was "a concurrent and a proximate cause." In conclusion, the doctor opines that, based upon a reasonable degree of medical certainty, had Dr. Subbiah diagnosed the tumor earlier or referred the plaintiff to a diagnostic facility, the plaintiff would have had a "fair chance (50/50) at regaining full use of his right leg in a brief recovery period, rather than the prolonged 24 month recovery period he underwent."

■ The defendant objected, both below and on appeal, to the plaintiff's offering the affidavit on the grounds that it contradicts the doctor's prior deposition testimony. The defendant submits that the

deposition statements of the plaintiff's expert were the equivalent of party or judicial admissions, which arguably removed the issue of proximate cause from contention. *Fountaine v. Hadlock* (1971), 132 Ill. App. 2d 343, 270 N.E.2d 222.

Despite the considerable attention devoted to the issue by both parties, we deem it unnecessary to decide whether or not the testimonial evidence in the case before us should be treated as a judicial admission, since we do not consider the substance of the doctor's affidavit to be in contradiction to his deposition statements. We find that Dr. Heydemann's affidavit and the excerpts from his deposition are consistent as to the theory that the defendant's delay in diagnosing the plaintiff's tumor contributed to his injury. In that respect, therefore, the affidavit was merely cumulative of the other evidence of record.

■ Nevertheless, we are compelled to agree with the trial court that the doctor's statements with respect to proximate cause fall short of the requisite burden of proof. In a medical malpractice case, the plaintiff must prove that it is more probably true than not true that the defendant's negligence was a proximate cause of the plaintiff's injury. (*Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 328 N.E.2d 301.) The doctor's affidavit estimates the plaintiff's chance at a better recovery, but for the negligence of Dr. Subbiah, at "50/50." In other words, the probabilities are equal that the conduct of the defendant had no effect on the plaintiff's condition, or that it proximately caused his injury. This fails to satisfy the plaintiff's burden of proof on an essential element of the cause of action and warranted the entry of summary judgment in favor of the defendant. See *Taylor v. Hocker* (1981) 101 Ill. App. 3d 639, 428 N.E.2d 662.

Accordingly, the judgment of the circuit court of Whiteside County is affirmed.

Affirmed.

HEIPLE, J., concurs.

JUSTICE BARRY, dissenting:

I would reverse the summary judgment entered by the trial court in this cause and remand for trial; hence, I must dissent.

The majority opinion states that plaintiff failed to satisfy his burden of proof on the issue of proximate cause and that plaintiff must prove that "it is more probably true than not true that the defendant's negligence was a proximate cause of the plaintiff's injury." That

is not the standard of review on appeal from a summary judgment. The Illinois Supreme Court, in *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871, recently stated:

"Because the purpose of a summary judgment proceeding is to determine whether there are any genuine issues of triable fact [citation], a motion for summary judgment should be granted only when 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citations.] While use of the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit [citation], it is a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt. [Citations.]"

The supreme court also stated that the pleadings, depositions, admissions, exhibits, and affidavits must be construed strictly against the movant and liberally in favor of the opponent in determining the existence of a genuine issue of material fact. The majority has not followed that maxim in this case.

The purpose of a summary judgment proceeding "is not to try an issue of fact but rather to determine whether there is an issue of fact to be tried." (*Beverly Bank v. Alsip Bank* (1982) 106 Ill. App. 3d 1012, 1016, 436 N.E.2d 598, 602.) Neither party has a "burden of proof" under a motion for summary judgment, and neither the trial court nor the reviewing court may weigh the evidence.

The majority opinion cites *Taylor v. Hocker* (1981), 101 Ill. App. 3d 639, 428 N.E.2d 662, for the proposition that plaintiff failed to satisfy its burden of proof as to an essential element of the cause of action. *Taylor v. Hocker* was a case where a shopping center customer brought a negligence action against the operators of the shopping center for injuries suffered when the customer was assaulted and stabbed by an unknown criminal assailant in the parking lot of the center. The court held that, *as a matter of law*, the defendant had no duty to take security precautions or to warn of violent attacks by third persons where the management had no notice of violent crimes occurring on the premises. In a case such as the one at bar, where there are no depositions or affidavits other than those of plaintiff's witness, summary judgment for defendant would be proper only if plaintiff fails to demonstrate an ability to offer evidence at trial on the proximate cause of his injury. *Cf. Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867.

Here Dr. Heydemann's discovery deposition asserted that the delay in diagnosis *was* causally related to plaintiff's injury and that the delay *was* a concurrent and proximate cause but that he could not say with medical certainty the extent to which the injury was caused by the delay in diagnosis. During cross-examination, Dr. Heydemann made some confusing comments, as quoted in the majority opinion above, but he clearly was led into that confusion when defendant's attorney wrongly defined "proximate" as "direct." Certainly defendant should not be able to take advantage of the ambiguity introduced by his own attorney. It would appear that the doctor's problem with the term "proximate cause" involved the difference between the medical and the legal understanding of the term.

In my judgment, the doctor's deposition and affidavit, taken together, are sufficient to create a jury issue as to the question of proximate cause. I certainly do not agree with the majority view that the determinative factor was the doctor's statement that there was a "50/50" probability the delay in diagnosis prolonged the recovery period. Using the test set forth in *Borowksi v. Von Solbrig* (1975), 60 Ill. 2d 418, 328 N.E.2d 301, the majority concluded that this testimony was insufficient to meet plaintiff's burden of proving proximate cause. *Borowski* was tried before a jury, and on appeal the supreme court considered the burden of proof necessary to establish proximate cause in a medical malpractice case. The court concluded that the question was properly submitted to the jury in that case.

Here there has been no trial, and so we are not in a position to consider whether plaintiff has met his burden of proof. Dr. Heydemann's deposition testimony and affidavit do establish that plaintiff can introduce evidence showing that defendant's delay in diagnosis was a cause of plaintiff's injury. The extent to which the delay in diagnosis retarded the recovery will be one of the questions to be determined by the jury. In sum, proximate cause is a material question of fact which should be submitted to trial.