(No. 68358.—

BENJAMIN GATLIN, by his Mother and Next Friend, Marla Gatlin, Appellant, v. BERNARD RUDER, M.D., *et al.* (Bernard Ruder, M.D., Appellee).

*Opinion filed May 23, 1990.—Rehearing denied October 1, 1990.*

MILLER, J., joined by RYAN, J., dissenting.

Leonard M. Ring & Associates, of Chicago, and Stephen Masters & Associates, of Joliet (Leonard M. Ring and Margaret A. McGuire of counsel), for appellant.

Robert W. Boyd and J. Dennis Marek, of Ackman, Marek, Boyd & Simutis, Ltd., of Kankakee, for appellee.

JUSTICE CALVO delivered the opinion of the court:

Marla Gatlin filed a medical malpractice action on behalf of her son, Benjamin Gatlin (Gatlin), against Bernard Ruder, M.D. (Ruder), an obstetrician, and Riverside Medical Center (Riverside). Gatlin alleged that during and/or immediately after his birth, he sustained injuries as a result of the negligence of Ruder and Riverside. Gatlin later amended his complaint to add

counts of negligence based on the doctrine of *res ipsa loquitur* (Ill. Rev. Stat. 1987, ch. 110, par. 2—1113). The circuit court of Kankakee County determined that no evidence indicated Ruder acted negligently, and therefore no issue of fact existed with regard to Ruder's negligence; thus, the court granted Ruder's motion for summary judgment (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005).

During subsequent discovery, Kenneth Niswander, M.D., a professor at the University of California at Davis medical school, was deposed. Based on Niswander's deposition, Gatlin filed a motion to vacate the summary judgment. The circuit court held that, even in light of Gatlin's new evidence, the record did not contain any evidence of wrongdoing by Ruder. Consequently, the circuit court denied Gatlin's motion. The appellate court affirmed the circuit court's order (178 Ill. App. 3d 1059), and we allowed Gatlin's petition for leave to appeal (107 Ill. 2d R. 315). Riverside is not involved in this appeal.

The issue before us is whether Gatlin presented enough evidence of Ruder's negligence to succeed in vacating the circuit court's order for summary judgment in Ruder's favor. Because Gatlin also based his complaint on the doctrine of *res ipsa loquitur*, our analysis must address those principles.

During Gatlin's birth, Ruder elected to perform a Caesarean section. Ruder based his decision, in part, on Gatlin's breech position in the womb. Gatlin was immediately admitted to the nursery after the delivery. Approximately three hours following the birth, a notation was made in Gatlin's medical chart that he had several large scratches and a bruise on the top of his head. Later that day and for each of the next five days, a note was made in Gatlin's chart that his color was dusky. On the fifth day after Gatlin's birth, a small abrasion was found on his right ear. A skull X ray taken three days after the

birth revealed a possible small, nondisplaced fracture in the right parietal region. Gatlin now has cerebral palsy which, according to the affidavit of Anthony Raimondi, M.D., resulted from the skull fracture. Gatlin could not determine how he obtained the skull fracture and other injuries; he sued Ruder for negligence occurring during the delivery and Riverside for negligence occurring after the delivery.

All of the evidence gathered prior to the entry of summary judgment indicated Gatlin's injuries did not occur during the delivery. Ruder filed an affidavit in which he stated the treatment he provided to Gatlin did not fall below the requisite standard of care. Ruder asserted that Gatlin was in excellent health at the time of the birth. Ruder also filed an affidavit by Anthony Raimondi, M.D., a pediatric neurosurgeon. Raimondi stated Gatlin suffered from a skull fracture which did not spontaneously occur in nature. Raimondi opined that Gatlin's injuries must have occurred within the hospital setting, not during the birth process. Ruder's and Raimondi's depositions confirmed their respective affidavits. Consequently, because the affidavits eliminated Ruder's actions as a cause of Gatlin's injuries, the trial court entered summary judgment in favor of Ruder.

Gatlin later moved to vacate the summary judgment, claiming new evidence, the deposition testimony of Niswander, indicated Ruder could have caused Gatlin's injuries during the delivery. The most crucial part of Niswander's testimony concerned his opinion as to the cause of Gatlin's skull fracture:

"Q. Do you have an—assuming that Benjamin Gatlin did suffer a non-displaced skull fracture, do you have an opinion as to a reasonable degree of medical and surgical certainty, as to what caused the skull fracture?

A. [NISWANDER]: I think it most likely would have resulted from squeezing of the baby's head in the pelvis.

Q. That would be by the obstetrician?

A. No. By the natural forces of the labor.

Q. You believe that that is sufficient to cause an undisplaced skull fracture?

A. Certainly have seen it. Yes. Indeed I do think. *It could also, of course, result from the obstetrician trying to displace the head.*" (Emphasis added.)

Ruder, in his deposition, admitted he attempted to rotate Gatlin with his hand because of Gatlin's breech position:

"Q. Did you try other artificial means to rotate the baby?

A. [RUDER]: Only on my examinations sometimes I did try to rotate the baby with my hand, but this is a very—this will rarely, you know, help anything.

You sometimes can try to help it and encourage it to rotate, but I did not use any instruments to rotate it if that is what you are questioning.

\* \* \*

Q. Now you say that you did digitally try to turn the baby's head in the labor room?

A. I think I did.

\* \* \*

Q. Would that require draping?

A. No. No, that is just in the course of an ordinary vaginal exam. You try to just see if the baby's head won't rotate a little bit."

According to Gatlin, the testimony by Niswander emphasized above, combined with Ruder's admission that he attempted to turn Gatlin's head with his hand, provided enough evidence of Ruder's negligence to vacate the motion for summary judgment.

Ruder, however, submitted an affidavit by Niswander in which Niswander stated:

"3. The Affiant has been informed that Plaintiff now alleges in a Motion to Vacate Summary Judgment, that he is quoted as saying that the injuries suffered by BENJAMIN GATLIN could have been caused by the actions of Defendant, BERNARD RUDER, M.D.

4. That at no place in the deposition have I indicated that DR. RUDER, in any way, practiced medicine below the standard of care required of an obstetrician. My testimony *** should not and cannot be taken as a criticism of DR. RUDER. Quite the opposite, it would be my testimony at trial that, in my opinion, DR. RUDER was well within the area of the standard of care and that nothing that he would have done prior to handing the child to the anesthesiologist would have been below the required standard of care. The anesthesiologist received the child in excellent condition, according to the medical records and at that point, DR. RUDER's duties with regard to the birth of BENJAMIN GATLIN would have been completed.

5. To interpret my testimony or my opinions in any way other than that DR. RUDER performed his duties as an obstetrician within the standard of care required of such obstetricians under these facts and circumstances would be an outright misquote or misinterpretation of my opinions."

Using this affidavit, Ruder contended Niswander's testimony did not provide any evidence of Ruder's negligence; Gatlin merely misinterpreted Niswander's deposition. The circuit court agreed with Ruder and ruled that Gatlin's additional evidence, namely Niswander's deposition, did not raise an issue of fact with regard to Ruder's negligence.

The appellate court concurred with the circuit court. The appellate court held:

"There is lack of evidence as to the abrogation of Dr. Ruder's duty to provide competent medical services. Dr. Niswander's statements fail to raise an issue of material fact regarding the necessary elements required to maintain a malpractice cause against Dr. Ruder. In a medical malpractice case, the plaintiff must prove that it is more probably true than not true that the defendant's negligence was a proximate cause of the plaintiff's injury. (*Russell v. Subbiah* (1986), 149 Ill. App. 3d 268, 500

N.E.2d 138.) The proffered testimony lacks evidentiary value to sufficiently support a vacatur order.

The plaintiff next asserts that his complaint pled that the injury gave rise to an inference of negligence on Dr. Ruder's part pursuant to the doctrine of *res ipsa loquitur*. [Citation.] He asserts that the summary judgment order should have been barred by the inference of negligence suggested under the doctrine.

*Res ipsa loquitur* is applicable in medical malpractice cases where the conduct of the doctor is grossly remiss or so contrary to acceptable and customary medical practices and standards shown of record that results or injuries complained of would not have occurred but for negligence. *Estell v. Barringer* (1972), 3 Ill. App. 3d 455, 278 N.E.2d 424.

The doctrine of *res ipsa loquitur* is a rule of evidence. It is not to be invoked to overcome evidence, but is to be applied in its absence. The doctrine is an exception to the general rule that negligence is not to be presumed, but must be affirmatively proved.

The plaintiff has failed to establish that it is more probable that Dr. Ruder caused his injuries, and not the hospital personnel. The application of the doctrine has been foreclosed regarding the instant defendant and summary judgment was properly extended." 178 Ill. App. 3d at 1060-61.

Our first concern is with the standard the appellate court applied in reviewing the motion to vacate summary judgment. The appellate court, citing *Russell*, held: "[T]he plaintiff must prove that it is more probably true than not true that the defendant's negligence was a proximate cause of the plaintiff's injury." Although *Russell* concerned a summary judgment motion and thus appears to support the holding of the appellate court in the case at bar, we disagree with the standard employed by *Russell* and the appellate court. The *Russell* standard accurately reflects a plaintiff's burden of proof at trial, but incorrectly sets forth a party's burden on a summary

judgment motion. A motion for summary judgment can only succeed "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c); see *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240; see also *Russell*, 149 Ill. App. 3d at 272-73 (Barry, J., dissenting).) The court must construe the evidence "strictly against the movant and liberally in favor of the opponent." (*Purtill*, 111 Ill. 2d at 240.) Summary judgment "is a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt." (*Purtill*, 111 Ill. 2d at 240.) Moreover, when a court considers new information regarding a motion for summary judgment, "the court must apply the same standards employed when the motion was considered for the first time, and determine the presence or absence of a genuine issue of material fact." (*In re Estate of Garbalinski* (1983), 120 Ill. App. 3d 767, 771.) Although the appellate court stated, "Niswander's statements fail[ed] to raise an issue of material fact," the court cited, and apparently applied, the incorrect standard of review set forth in *Russell*.

Applying the standard established by the statute and *Purtill*, we hold that an issue of material fact with regard to Ruder's negligence arose as a result of Niswander's deposition. Our duty is not to judge the strength of Niswander's deposition as evidence or to weigh the credentials, credibility and testimony of Niswander against those of Ruder and Raimondi. We must decide whether Niswander's deposition presented evidence that Ruder may have proximately caused Gatlin's injuries; we hold it did. Certainly proximate cause is an issue of material fact in a negligence suit. Niswander's affidavit did not

alter his deposition. The trier of fact should merely consider the affidavit with all of the other evidence in the case. When a circuit court, in considering a motion for summary judgment, weighs the deposition of a witness presented by the opponent to the motion with a subsequently obtained affidavit of that witness by the movant, the court, in effect, admits an issue of material fact exists. A court cannot decide factual disputes as a matter of law. (See *Spidle v. Steward* (1980), 79 Ill. 2d 1, 10.) For these reasons, Gatlin's motion to vacate summary judgment should have been granted.

We also find the appellate court applied the wrong *res ipsa loquitur* standard. We explained *res ipsa loquitur* in *Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 448-50:

"When a thing which caused the injury is shown to be under the control or management of the party charged with negligence and the occurrence is such as in the ordinary course of things would not have happened if the person so charged had used proper care, the accident itself affords reasonable evidence, in the absence of an explanation by the party charged, that it arose from want of proper care. [Citations.] This in essence is the doctrine of *res ipsa loquitur*, and its purpose is to allow proof of negligence by circumstantial evidence when the direct evidence concerning cause of injury is primarily within the knowledge and control of the defendant. [Citation.] Like any other proof it may be explained or rebutted by the opposing party. *** [T]he inference, or presumption, [of negligence] does not simply vanish or disappear when contrary evidence appears, but remains to be considered with all the other evidence in the case and must be weighed by the jury against the direct evidence offered by the party charged. ***

Whether the doctrine applies in a given case is a question of law which must be decided by the court, but once this has been answered in the affirmative, it is for the trier of fact to weigh the evidence and determine

whether the circumstantial evidence of negligence has been overcome by defendant's proof."

As indicated in *Metz*, when a plaintiff relies on the doctrine of *res ipsa loquitur*, the court must determine whether the doctrine applies (Ill. Rev. Stat. 1987, ch. 110, par. 2—1113):

> "In making that determination, the court shall rely upon either the common knowledge of laymen, if it determines that to be adequate, or upon expert medical testimony, that the medical result complained of would not have ordinarily occurred in the absence of negligence on the part of the defendant. Proof of an unusual, unexpected or untoward medical result which ordinarily does not occur in the absence of negligence will suffice in the application of the doctrine." Ill. Rev. Stat. 1987, ch. 110, par. 2—1113.

Our opinion in *Spidle* specifically set forth the requirements of the *res ipsa loquitur* doctrine:

> "The *res ipsa loquitur* doctrine is a species of circumstantial evidence permitting the trier of fact to draw an inference of negligence if plaintiff demonstrates that he or she was injured '(1) in an occurrence that ordinarily does not happen in the absence of negligence, (2) by an agency or instrumentality within the defendant's exclusive control, and (3) under circumstances indicating that the injury was not due to any voluntary act or neglect on the part of the plaintiff ***.' (3 J. Dooley, Modern Tort Law sec. 48.02 (1977). See also W. Prosser, Torts sec. 39 (4th ed. 1971)). Illinois recognizes this doctrine (*Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446) and its applicability to medical malpractice actions (*Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298; *Walker v. Rumer* (1978), 72 Ill. 2d 495)." (*Spidle*, 79 Ill. 2d at 5-6.)

In light of this court's adoption of comparative negligence (*Alvis v. Ribar* (1981), 85 Ill. 2d 1), the third element of *res ipsa loquitur* has subsequently been eliminated; plaintiffs now need only plead and prove the first

two elements. *Dyback v. Weber* (1986), 114 Ill. 2d 232, 239.

Citing *Estell v. Barringer* (1972), 3 Ill. App. 3d 455, the appellate court held *res ipsa loquitur* "applicable in medical malpractice cases where the conduct of the doctor is grossly remiss or so contrary to acceptable and customary medical practices and standards shown of record that results or injuries complained of would not have occurred but for negligence." (178 Ill. App. 3d at 1061.) In *Spidle*, however, we indicated *Estell* misinterpreted *res ipsa loquitur*:

> "Before our opinion in *Walker*, there was a misconception that *res ipsa loquitur* only applied in medical malpractice actions when the medical activity at issue was within the common knowledge of laymen. (See, *e.g., Slater v. Missionary Sisters of the Sacred Heart* (1974), 20 Ill. App. 3d 464; *Estell v. Barringer* (1972), 3 Ill. App. 3d 455.) The court recognized in *Walker*, however, that expert testimony could establish a negligence probability where jurors were unfamiliar with the issue." (*Spidle*, 79 Ill. 2d at 6.)

(See also *Estell*, 3 Ill. App. 3d at 462 (Moran, J., dissenting).) Consequently, to the extent the appellate court in the case at bar relied on *Estell*, the appellate court misapplied *res ipsa loquitur*. *Spidle, Dyback* and *Metz* reflect the correct analysis of *res ipsa loquitur*. Therefore, we will apply the *res ipsa loquitur* principles set forth in *Spidle, Dyback* and *Metz* to the case at bar.

Gatlin points out he presented evidence on both *res ipsa loquitur* requirements. First, Raimondi testified by deposition that Gatlin's injuries, including the skull fracture, would not have occurred absent negligence. Raimondi also stated in his affidavit that Gatlin's skull fracture caused Gatlin's present neurological problems. Second, evidence revealed Ruder or Riverside had exclusive control over the agency or instrumentality which

caused Gatlin's injuries. In other words, Gatlin suffered his injuries at the hands of either Ruder during the delivery or Riverside's employees in the nursery immediately after the delivery.

We agree with Gatlin, and Ruder does not disagree, that Gatlin established, for purposes of summary judgment, the first element of *res ipsa loquitur*. The second element—defendant's exclusive control over the instrumentality which caused the injury—is more problematic because two defendants are involved. The appellate court held: "[Gatlin] failed to establish that it is more probable that Dr. Ruder caused his injuries, and not the hospital personnel." This statement, however, does not correctly state Gatlin's burden of proof on a motion for summary judgment. Gatlin only had to present enough evidence to raise an issue of fact as to whether Ruder had control over the instrumentality which caused Gatlin's injuries.

In *Drewick v. Interstate Terminals, Inc.* (1969), 42 Ill. 2d 345, plaintiff was injured when a steel ventilator-window sash fell on her from a building owned by defendant. Plaintiff filed a negligence suit against defendant and the case was submitted to the jury on the basis of *res ipsa loquitur*. The jury awarded judgment in favor of plaintiff, and the appellate court reversed the judgment. This court, however, reversed the appellate court. One of the issues in *Drewick* was whether defendant had control over the instrumentality which caused plaintiff's injuries. Although defendant owned the building from which the window fell, defendant argued its lessee, Interstate Dispatch, had control over the window. We recognized a serious factual issue existed with regard to the degree of control defendant exercised over the window. (*Drewick*, 42 Ill. 2d at 349.) We then reiterated the conflicting evidence presented at trial concerning whether defendant or Interstate Dispatch controlled the window. We held:

"The problem faced by the trial judge in these unusual circumstances was whether to decide these factual questions himself or to submit the entire case to the jury under a cautionary instruction.

On the basis of this evidence and the record as a whole, we hold it was not error for the trial court to send the case to the jury on a *res ipsa* instruction, particularly where the jury was expressly instructed that control on defendant's part was a prerequisite to its liability.

*** The verdict *** establishes that the jury was convinced that the injury would not have occurred except for the negligence of the [defendant] in the intervening period prior to the injury." (*Drewick*, 42 Ill. 2d at 351-52.)

In the case at bar, as in *Drewick*, the trier of fact should decide who maintained control, Ruder or Riverside.

The appellate court also implied that Gatlin had to eliminate all other possible causes of his injuries before he could invoke *res ipsa loquitur*. The appellate court stated: "[*Res ipsa loquitur*] is not to be invoked to overcome evidence, but is to be applied in its absence." (178 Ill. App. 3d at 1061.) Gatlin, however, did not have to eliminate all other possible causes of his injuries. (See *Spidle*, 79 Ill. 2d at 11-12; *Metz*, 32 Ill. 2d at 449-50.) The jury must determine who proximately caused Gatlin's injuries.

In *Kolakowski v. Voris* (1980), 83 Ill. 2d 388, plaintiff brought a negligence suit against several doctors for back surgery which rendered plaintiff a quadriplegic. Plaintiff also sued the hospital on a *res ipsa loquitur* theory. The circuit court granted the hospital's motion for summary judgment, but the appellate court reversed that decision. We affirmed the appellate court. On appeal to this court, the hospital argued that plaintiff could not rely on *res ipsa loquitur* because plaintiff introduced evidence of specific negligence. The hospital asserted that if plaintiff knew in what respects the hospital was negligent, *res ipsa loquitur* was inapplicable because the hos-

pital no longer had exclusive control of the direct evidence. We rejected this argument:

> "Defendant's theory would be accurate if the evidence introduced by plaintiff conclusively established the exact cause of his injuries. Here, the deposition of plaintiff's expert witness, Dr. Fox, reveals that, in his opinion, plaintiff's injuries were the result of the forcing of a bone 'plug' against the spinal cord after the disc was removed. This statement 'was merely the opinion of the [expert] witness, given, as such, upon a state of facts assumed to be true. It still remained for the jury to determine the facts, and the opinion was nevertheless an opinion only, whether it states what did cause the condition or what might cause it.' [Citation.] The inference of negligence raised by the doctrine of *res ipsa loquitur* does not disappear when such specific evidence is admitted. Rather, both the opinion of the expert witness as well as the inference of general negligence arising from the doctrine of *res ipsa loquitur* remain to be considered by the jury with all other evidence in the case. [Citation.] Our appellate court has consistently permitted a plaintiff to introduce evidence of specific negligence without depriving him of his right to rely on the doctrine of *res ipsa loquitur* where such specific evidence does not conclusively establish the cause of injury." (*Kolakowski*, 83 Ill. 2d at 397.)

Likewise, in the case at bar, although Gatlin presented evidence which indicated Riverside may have caused his injuries, such evidence did not conclusively establish the cause of those injuries. The evidence Gatlin presented against Ruder also did not conclusively establish the cause of Gatlin's injuries. The testimony and statements of Ruder, Raimondi and Niswander were merely the differing opinions of experts. The trier of fact has to decide what facts and opinions to believe. Therefore, Gatlin's *res ipsa loquitur* theory does not necessarily fail.

Ruder argues Gatlin presented no specific evidence that Ruder's actions fell below the appropriate standard of medical care. Under *res ipsa loquitur*, however, Gatlin

need not present such evidence. Gatlin must only present evidence on each of the *res ipsa loquitur* requirements. By proving that the injury does not ordinarily occur in the absence of negligence and that defendant had control over the instrumentality which caused plaintiff's injury, plaintiff can present circumstantial evidence from which the jury could infer negligence. (*Metz*, 32 Ill. 2d at 448-49.) Consequently, Ruder's contention is without merit.

Although both parties discuss the applicability of *Barkei v. Delnor Hospital* (1988), 176 Ill. App. 3d 681, a discussion of *Barkei* would not be helpful, and is not necessary, to the resolution of this case. We also note that the result reached in *Barkei* is consistent with the result we have reached here.

For the foregoing reasons, we reverse the judgments of the appellate court and the circuit court, and remand the cause to the circuit court of Kankakee County for proceedings consistent with this opinion.

*Judgments reversed;*
*cause remanded.*

JUSTICE MILLER, dissenting:

I disagree with the majority's conclusion that defendant Ruder was not entitled to summary judgment in his favor, and for that reason I respectfully dissent.

The plaintiff brought the present negligence action against Dr. Bernard Ruder and Riverside Medical Center for injuries the plaintiff allegedly sustained during or following the time of his birth. Defendant Ruder subsequently moved for summary judgment, relying in part on statements of the plaintiff's expert witness, Dr. Anthony Raimondi, that the plaintiff's injury did not occur at birth and that defendant Ruder exercised due care in his delivery of the child. The trial judge granted summary judgment in defendant Ruder's favor. The plaintiff later moved for reconsideration on the basis that new evi-

dence—the deposition of the hospital's expert witness, Dr. Kenneth Niswander—indicated that the plaintiff's injury occurred during delivery. In response to the plaintiff's motion, counsel for defendant Ruder submitted an affidavit by Dr. Niswander denying that he believed that defendant Ruder had been negligent. The trial judge denied the motion for reconsideration, and that judgment was affirmed by the appellate court.

Relying on the doctrine of *res ipsa loquitur*, the plaintiff contends that a question of fact is now raised by the combination of Dr. Niswander's deposition testimony concerning the possible cause of the child's injury and Dr. Raimondi's statements that the injury could not have occurred in the absence of negligence.

*Res ipsa loquitur* affords an inference of negligence. The doctrine is not applicable unless the plaintiff demonstrates that he was injured " '(1) in an occurrence that ordinarily does not happen in the absence of negligence, [and] (2) by an agency or instrumentality within the defendant's exclusive control.' " (*Spidle v. Steward* (1980), 79 Ill. 2d 1, 5.) Whether *res ipsa loquitur* is available in a particular case is a question of law to be determined by the court. (*Imig v. Beck* (1986), 115 Ill. 2d 18, 27; see Ill. Rev. Stat. 1987, ch. 110, par. 2—1113 (in action for medical malpractice, court to determine whether doctrine of *res ipsa loquitur* is applicable).) I would conclude in the present case that the doctrine was not applicable to defendant Ruder and that it did not later become available through the deposition testimony of Dr. Niswander.

The testimony used by the plaintiff to establish the applicability of the *res ipsa loquitur* doctrine also demonstrated that the doctrine could not properly be asserted against defendant Ruder. The plaintiff's expert witness, Dr. Raimondi, believed that the plaintiff's skull fracture could not have occurred in the absence of negligence. Dr.

Raimondi also stated that the fracture did not occur during delivery. Thus, at the time defendant Ruder moved for summary judgment, Dr. Raimondi had effectively eliminated use of the *res ipsa loquitur* doctrine against defendant Ruder, and there was no evidence of any specific act of negligence on the part of that defendant. The trial judge correctly granted defendant Ruder's motion for summary judgment.

I do not believe that Dr. Niswander's subsequent statements concerning the causation of the skull fracture made the *res ipsa loquitur* doctrine applicable to defendant Ruder or constituted new evidence of specific acts of negligence by him. In his deposition, Dr. Niswander stated his belief that the plaintiff's skull fracture most likely resulted from the natural forces of labor. Dr. Niswander also stated that the fracture could have been caused by the obstetrician's efforts to manipulate the child's head, an action Dr. Ruder admittedly may have performed. Dr. Niswander did not say, however, that such conduct, assuming it occurred, was negligent. In a later affidavit, filed in response to the plaintiff's request for reconsideration, Dr. Niswander expressly stated that he did not believe that defendant Ruder had been negligent and, moreover, that any suggestion that the witness did find fault with the obstetrician's conduct was a misrepresentation of his views.

Unlike *Kolakowski v. Voris* (1980), 83 Ill. 2d 388, cited by the plaintiff, there is not in the present case specific evidence of negligence in addition to the inference of negligence provided by the *res ipsa loquitur* doctrine. The plaintiff's own expert had stated that defendant Ruder was not negligent and that the plaintiff's injury did not occur during delivery. Thus, I do not believe that a question of fact concerning defendant Ruder's conduct was raised by defendant Riverside's subsequent theory that the plaintiff's injury did in fact occur during delivery. Had

Riverside's expert stated that the accident occurred while the plaintiff was under defendant Ruder's control and either that Ruder's conduct was negligent (a specific act of negligence) or that the injury could not have occurred without negligence (*res ipsa* again), then, of course, the motion for reconsideration would have stood in a different light. Dr. Niswander believed not only that the injury occurred during birth, but also that the obstetrician was not negligent in his conduct. Accordingly, it cannot be said that defendant Ruder's conduct raises a question of fact either under a theory of specific negligence, or under a theory resting on the inference of negligence afforded by the *res ipsa loquitur* doctrine.

A question of fact remains whether defendant Riverside was negligent in its care of the child following the delivery. That determination will require consideration of whether the plaintiff's injury occurred following the delivery, during the time he was under the control of the hospital rather than of defendant Ruder, and, if so, whether the hospital employees were negligent. The plaintiff's expert has stated that the skull fracture would not ordinarily occur in the absence of negligence. If different evidence shows that the accident occurred while the child was under defendant Ruder's control, then the plaintiff's *res ipsa loquitur* theory against Riverside will, of course, fail. No such evidence was presented here.

On this record, defendant Ruder was entitled to summary judgment, in light of the testimony of the plaintiff's own expert limiting application of the *res ipsa loquitur* theory to defendant Riverside and absolving defendant Ruder of negligence; Dr. Niswander's later statements did not provide the plaintiff with any further evidence in support of his claim against the obstetrician. Accordingly, I dissent from the majority's contrary holding.

JUSTICE RYAN joins in this dissent.