Nos. 2--95--1621, 2--96--0179 cons.

                                                                         

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              SECOND DISTRICT

KELLY A. FLINT,                     )  Appeal from the Circuit

Court

                               )  of Du Page County.

     Plaintiff-Appellant,           )

                               )

v.                                  )  No. 95--CH--222

                                    )

COURT APPOINTED SPECIAL             )

ADVOCATES of DU PAGE COUNTY,        )

INC., a/k/a CASA of Du Page         )

County, BRIAR PICCHIETTI,           )

Indiv., and NATIONAL COURT          )

APPOINTED SPECIAL ADVOCATE          )

ASSOCIATION, a/k/a NCASAA,          )  Honorable

                                    )  Bonnie M. Wheaton,

     Defendants-Appellees.          )  Judge, Presiding.

                                                                  

  

     

     JUSTICE GEIGER delivered the opinion of the court:

     The plaintiff, Kelly Flint, appeals from the order of the

circuit court of Du Page County granting summary judgment in favor

of defendants, Court Appointed Special Advocates of Du Page County,

Inc. (CASA of Du Page County), and Briar Picchietti,  on her claims

for breach of contract and tortious interference with an existing

contract.  She also appeals from the trial court's order dismissing

her claim against the defendant, the National Court Appointed

Special Advocate Association (NCASAA), for lack of personal

jurisdiction.  We affirm in part, reverse in part, and remand for

further proceedings.

     NCASAA is a not-for-profit corporation which provides

technical assistance and training to CASA programs throughout the

United States.  NCASAA also disburses funds it receives from the

United States Department of Justice, Office of Juvenile Justice and

Delinquency Prevention (the DOJ), in the form of grants to local

CASA programs.  Local CASA programs provide trained, community

volunteers to advocate for the best interests of children who come

into the court system, primarily as a result of abuse or neglect. 

Local CASA programs recruit, screen, train, and supervise these

volunteers to either serve as guardians ad litem for children,

assist attorney guardians ad litem in their representation, or

serve as independent third-party "Friends of the Court."  As such,

local CASA programs are intended to serve the overall public

interest in the welfare of children.  Local CASA programs are

independent organizations which become members of NCASAA in order

to enjoy the benefits of membership.  As a condition of NCASAA

membership, local CASA programs agree to abide by NCASAA's

membership standards.  NCASAA offers its members various support

services, which may include training, technical assistance, the

right to use certain trademarks and copyrighted materials, and the

award and administration of DOJ grant funds to qualifying

applicants.

     NCASAA members include numerous local CASA programs in all 50

states.  In Illinois, there are one state and 20 local CASA

programs which is a NCASAA member.  CASA of Du Page County is one

of the local CASA programs in Illinois which are NCASAA members. 

CASA of Du Page County is a not-for-profit Illinois corporation. 

As such, it is dependent upon charitable contributions for its

operation, and NCASAA grants are its only source of substantial and

continued funding.

     Picchietti has been a member of CASA of Du Page County's board

of directors (the Board) since at least January 1, 1994.  During

1995, Picchietti was the president of the Board.

     During 1994, the plaintiff served as CASA of Du Page County's

executive director.  On April 27, 1994, CASA of Du Page County

entered into a contract with the plaintiff under which the

plaintiff would serve as executive director on an independent

contractor basis (the original contract).  The original contract

was for the period beginning January 1, 1994, and ending December

31, 1994.  The original contract provides, in pertinent part:

     "[The plaintiff] is to receive as compensation an amount equal

     to fifty (50) percent of the total gross receipts donated,

     given and/or granted to CASA of Du Page County[] for the

     period beginning January 1, 1994 and ending December 31, 1994,

     up to an amount not to exceed $50,000.00."

     In March 1994, the plaintiff applied for a NCASAA grant on

behalf of CASA of Du Page County.  On July 20, 1994, NCASAA entered

into an agreement to grant CASA of Du Page County $75,000, payable

in quarterly installments over the period beginning July 1, 1994,

and ending June 30, 1996, (the grant).  By entering into the

agreement, CASA of Du Page County accepted the terms and conditions

of the grant.  Under the agreement, NCASAA may terminate the grant

and cease making disbursements at any time during the grant period

for violations of the grant's terms and conditions.

     At a Board meeting on October 6, 1994, the plaintiff presented

a proposed payout schedule which provided for payments which she

believed CASA of Du Page County owed her under the original

contract.  The Board approved the idea of a payout schedule for the

plaintiff.  However, the Board had CASA of Du Page County's general

counsel, Maria Jensen, review the proposed payout schedule.  After

reviewing the proposed payout schedule, Jensen prepared an

amendment to the original contract (the amendment to the contract).

     At a Board meeting on November 18, 1994, the Board reviewed

and approved the amendment to the contract.  Peter S. McCabe, who

was the president of the board at that time, signed the amendment

to the contract on behalf of CASA of Du Page County, and the

plaintiff signed on her own behalf.  The amendment to the contract

adds the following language to the compensation provisions of the

original contract:

          "If [the plaintiff's] total compensation from CASA [of Du

     Page County] for 1994 does not total $50,000.00, the parties

     agree, that [the plaintiff] will be entitled to an additional

     $16,984.00 *** from the sums actually received from the NCASAA

     grant awarded to CASA [of Du Page County] in 1994, providing

     for distributions through January, 1996."

The amendment to the contract then provides for a payout schedule

through 1995 and ending in January 1996 for payouts totalling

$16,984, the amount sought in the plaintiff's amended complaint. 

Finally, the amendment to the contract provides that

"[r]eimbursement to [the plaintiff] pursuant to the aforesaid

payment schedule is subject to the *** condition that the sums are

actually received, as set forth in the NCASAA Grant."

     The substantial difference between the plaintiff's proposed

payout schedule and the amendment to the contract drafted by Jensen

was the addition of the language that the payments to the plaintiff

during 1995 and 1996 were to be made from funds "actually received"

from the NCASAA grant awarded in 1994.  Prior to executing the

amendment to the contract, McCabe informed the plaintiff that the

terms "actually received" from the NCASAA grant were added by CASA

of Du Page County to make clear that CASA of Du Page County would

only be obligated under the payout schedule contained in the

amendment to the contract to pay her from funds actually received

from NCASAA pursuant to the grant.  He also informed her that the

language was added to make clear that CASA of Du Page County was

not obligated to pay her should it lose the NCASAA grant for any

reason, as CASA of Du Page County had no other source of continued

and substantial funding from which to pay her.

     On December 1, 1994, the plaintiff submitted a letter to CASA

of Du Page County, advising that she would not be renewing her

contract to serve as executive director for 1995.  At the time

McCabe signed the amendment to the contract on behalf of CASA of Du

Page County, neither he nor the Board was aware that the plaintiff

would not serve as CASA of Du Page County's executive director

during 1995.  In addition, neither he nor the Board knew that

NCASAA would prohibit CASA of Du Page County from paying the

plaintiff pursuant to the amendment to the contract from NCASAA

funds if the plaintiff were no longer providing services to CASA of

Du Page County.

     During the period beginning July 1, 1994, and ending December

31, 1994, CASA of Du Page County received $30,000 from NCASAA

pursuant to the grant.  During 1994, CASA of Du Page County

received $11,149.10 from all other grants, contributions, and fund

raisers.  During 1994, CASA of Du Page County paid the plaintiff

$26,090.55 as compensation.  Of this amount, $20,516.00 was paid

from funds received from NCASAA in 1994 pursuant to the grant.  The

plaintiff has performed no services in any paid capacity for CASA

of Du Page County since December 31, 1994.

     CASA of Du Page County had no executive director during

January 1995.  On or about January 13, 1995, CASA of Du Page County

received a $7,500 grant disbursement check from NCASAA, which was

deposited into its checking account.

     On January 20, 1995, in order to determine how to prepare a

request for quarterly grant disbursement from NCASAA, Picchietti

contacted Sue Shecket, NCASAA's grant administrator.  Picchietti

asked Shecket how to prepare the request for quarterly grant

disbursement from NCASAA and how to indicate CASA of Du Page

County's payout obligation to the plaintiff under the amendment to

the contract.  Picchietti informed Shecket of the following:  (1) 

that the plaintiff was no longer performing services on CASA of Du

Page County's behalf; (2) that the plaintiff had served as CASA of

Du Page County's executive director on an independent contractor

basis, with compensation based on a percentage of the total gross

receipts donated, given, and/or granted to CASA of Du Page County

for the period of her tenure; and (3) that, under the amendment to

the contract, CASA of Du Page County was to pay the plaintiff a

portion of the funds that CASA of Du Page County would receive from

NCASAA under the grant during 1995 and 1996.

     Shecket informed Picchietti that NCASAA prohibited CASA of Du

Page County from paying any portion of the grant funds which would

be distributed to CASA of Du Page County during 1995 and 1996 as

compensation to the plaintiff when she was no longer performing

services for CASA of Du Page County.  Shecket also informed

Picchietti that if CASA of Du Page County paid any portion of the

grant funds which would be distributed during 1995 and 1996 to the

plaintiff while she was not performing services on behalf of CASA

of Du Page County, NCASAA would rescind the grant and cease

payments thereunder.

     Following her conversation with Picchietti, Shecket discussed

the situation with Michael Piraino, NCASAA's chief executive

officer.  As a result of their discussion, Shecket sent a letter to

Picchietti in which she clarified the requirements and limitations

on the use of the remaining NCASAA grant funds, stating that

"[r]emaining grant funding may be used to compensate only those

personnel that are currently performing activities directly related

to the purposes of the grant."

     After Picchietti's telephone conversation with Shecket and

after receiving Shecket's letter, Picchietti conferred with the

executive committee of the Board (the Executive Committee).  The

Executive Committee agreed that, given NCASAA's position, CASA of

Du Page County could not pay the plaintiff under the amendment to

the contract.

     On January 21, 1995, the plaintiff sent a letter to CASA of Du

Page County requesting that she be paid the $3,750 due her under

the payout schedule in the amendment to the contract.  On January

30, 1995, she sent a letter to CASA of Du Page County demanding

that she be paid the $3,750.

     On March 2, 1995, CASA of Du Page County responded to the

plaintiff's demands for payment through its general counsel, Dianne

Carroll.  In that letter, CASA of Du Page County informed the

plaintiff that it was unable to comply with her request due to the

restrictions that NCASAA placed upon the use of the grant funds.

CASA of Du Page County further informed the plaintiff that the

amendment to the contract was predicated upon a mutual mistake of

fact and that CASA of Du Page County's performance thereunder was

discharged because of impossibility of performance.

     On March 22, 1995, the plaintiff filed a three-count complaint

against CASA of Du Page County, Picchietti, and NCASAA.  Count I

was a claim for breach of contract against CASA of Du Page County;

count II was a claim for tortious interference with an existing

contract against Picchietti; and count III was a claim against

NCASAA, alleging that the plaintiff had been injured by NCASAA's

failure to carry through on its promise to make quarterly payments

to CASA of Du Page County through June 1996.  

     On March 31, 1995, CASA of Du Page County filed an answer to

the complaint, admitting that the parties entered into the

amendment to the contract as alleged in the complaint, but alleging

the affirmative defenses of impossibility of performance and

mistake of fact.

     On April 24, 1995, Picchietti filed a motion to strike and

dismiss count II of the plaintiff's complaint and the ad damnum

clause of count I of the complaint insofar as it related to her.

     On May 4, 1995, NCASAA was served with the summons and

complaint.

     On May 31, 1995, following a hearing on Picchietti's motion to

strike and dismiss, the trial court entered an order, striking

Picchietti from the ad damnum clause of count I and dismissing

count II of the plaintiff's complaint.

     On June 5, 1995, NCASAA entered a special and limited

appearance in this case.  NCASAA filed a motion to quash service of

the summons and to dismiss count III of the complaint for lack of

personal jurisdiction.  NCASAA argued that service of the summons

must be quashed because the summons was served more than 30 days

after the date of its issue, in violation of Supreme Court Rule

102(b) (134 Ill. 2d R. 102(b)).  In addition, NCASAA argued that

count III of the complaint must be dismissed because the trial

court lacks personal jurisdiction over NCASAA, under either the

Illinois long-arm statute or the federal and state constitutions. 

In support of its motion, NCASAA filed a memorandum of law and an

affidavit of Piraino.

     On June 20, 1995, the plaintiff filed an amended complaint. 

In count II of the amended complaint, the plaintiff alleged that

Picchietti intentionally and maliciously interfered with the

contract between the plaintiff and CASA of Du Page County and

induced CASA of Du Page County to breach the contract.

     On July 13, 1995, Picchietti filed an answer to the

plaintiff's amended complaint and her affirmative defenses, which

included impossibility of performance, mistake of fact, and

corporate officer qualified privilege.

     On July 25, 1995, the trial court held a hearing on NCASAA's

motion to quash service of the summons and to dismiss the complaint

for lack of personal jurisdiction.  The trial court granted

NCASAA's motion to quash service of the summons, ruled that it

lacked jurisdiction to decide NCASAA's motion to dismiss because

NCASAA had not been properly served, and granted the plaintiff

leave to attempt to properly serve NCASAA.

     On August 2, 1995, CASA of Du Page County and Picchietti filed

a motion for summary judgment.  In support of their motion, they

filed several affidavits, including an affidavit of Piraino.  In

his affidavit, Piraino stated:

          "[U]nder the terms of the agreement between NCASAA and

     the DOJ governing the distribution of DOJ funds to NCASAA, as

     well as under the pertinent DOJ regulations, the subgrants

     NCASAA distributes to local CASA programs can only be used to

     reimburse activities occurring during the Grant period.  For

     this reason, NCASAA is prohibited from allowing the funds

     which will be disbursed under the Grant to be disbursed by

     CASA of Du Page County to [the plaintiff] while she is no

     longer rendering services to CASA of Du Page County.

          *** For the foregoing reasons, NCASAA has prohibited CASA

     of Du Page County from paying any portion of the Grant funds

     which will be distributed to CASA of Du Page County during

     1995 and 1996 as compensation to [the plaintiff] while she is

     no longer performing services as the Executive Director of

     CASA of Du Page County.  If CASA of Du Page County pays any

     portion of the Grant funds which will be distributed during

     1995 and 1996 to [the plaintiff] while she is not performing

     services on behalf of CASA of Du Page County, NCASAA will

     rescind the Grant and cease payments thereunder to CASA of Du

     Page County."

     On August 3, 1995, the plaintiff filed a motion for summary

judgment against CASA of Du Page County.

     On August 7, 1995, the plaintiff served NCASAA with a summons

and amended complaint.  On August 9, 1995, NCASAA filed a motion to

dismiss count III of the amended complaint for lack of personal

jurisdiction.

     On August 28, 1995, the trial court heard arguments on the

plaintiff's motion for summary judgment against CASA of Du Page

County and on CASA of Du Page County and Picchietti's motion for

summary judgment against the plaintiff.  Following the arguments of

counsel, the trial court granted summary judgment in favor of CASA

of Du Page County and Picchietti and against the plaintiff on

counts I and II of the plaintiff's amended complaint.

     As to the claim against CASA of Du Page County, the trial

court found that there was no consideration for the amendment to

the contract and that if CASA of Du Page County brought a

counterclaim for rescission, the court would be compelled to

rescind the contract and return the parties to the status quo as of

November 18, 1994.  As to the issue of impossibility of

performance, the trial court found that, if CASA of Du Page County

paid any NCASAA grant funds to the plaintiff during 1995 and 1996,

while the plaintiff was no longer working for CASA of Du Page

County, NCASAA would not disburse any additional funds to CASA of

Du Page County and CASA of Du Page County would not be able to pay

any additional funds to the plaintiff.  As to the issue of mutual

mistake of fact, the trial court found that the parties did not

contemplate that CASA of Du Page County's performance under the

amendment to the contract would bring about the destruction of the

NCASAA grant, which was CASA of Du Page County's means of meeting

its obligations under the amendment to the contract.  The trial

court also found that CASA of Du Page County did not owe the

plaintiff anything further under the original contract.

     In granting summary judgment in favor of Picchietti on the

plaintiff's claim for tortious interference with an existing

contract, the trial court found that, in contacting NCASAA,

Picchietti acted in her capacity as president of the Board of a

not-for-profit corporation.  In addition, the trial court found

that, even if Picchietti had an improper motive in contacting

NCASAA, Picchietti could not be held liable for tortious

interference with an existing contract because the amendment to the

contract was unenforceable.

     The plaintiff filed a motion to reconsider, arguing that the

trial court erred in holding:  (1) that no consideration existed

for the amendment to the contract; (2) that CASA of Du Page County

did not owe her anything further under the original contract; (3)

that, as to the amendment to the contract, the defenses of mutual

mistake of material fact and impossibility of performance would

have been available to CASA of Du Page County; and (4) that no

genuine issue of material fact existed regarding her claim against

Picchietti.

     On November 22, 1995, the trial court granted, with prejudice,

NCASAA's motion to dismiss count III of the plaintiff's amended

complaint for lack of personal jurisdiction.  The trial court's

order contained language allowing appeal under Supreme Court Rule

304(a) (155 Ill. 2d R. 304(a)).  The plaintiff filed a timely

notice of appeal from the order granting NCASAA's motion to

dismiss.

     On January 19, 1996, the trial court denied the plaintiff's

motion for reconsideration of its August 28, 1995, order granting

summary judgment in favor of CASA of Du Page County and Picchietti. 

The plaintiff filed a timely notice of appeal from the August 28,

1995, and January 19, 1996, orders.  This court allowed the

plaintiff's motion to consolidate the appeals.

     We will begin our analysis by addressing the issue of whether

the trial court properly granted summary judgment in favor of CASA

of Du Page County.  Since the purpose of a summary judgment

proceeding is to determine whether a genuine issue of triable fact

exists (Purtill v. Hess, 111 Ill. 2d 229, 240 (1986)), a motion for

summary judgment should be granted "if the pleadings, depositions,

and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law" (735

ILCS 5/2--1005(c) (West 1994); see also Gatlin v. Ruder, 137 Ill.

2d 284, 293 (1990)).  While the use of the summary judgment

procedure is to be encouraged in the interest of the prompt

disposition of lawsuits, it is a drastic means of disposing of

litigation and therefore it should be allowed only when a party's

right to it is clear and free from doubt.  Pyne v. Witmer, 129 Ill.

2d 351, 358 (1989).  In determining the existence of a genuine

issue of material fact, the court must construe the evidence

strictly against the moving party and liberally in favor of the

nonmoving party.  Gatlin, 137 Ill. 2d at 293.  While a party

opposing a motion for summary judgment need not prove his case at

that preliminary stage, he is required to present some factual

basis that would arguably entitle him to a judgment in his favor. 

Fuentes v. Lear Siegler, Inc., 174 Ill. App. 3d 864, 866 (1988). 

If a plaintiff fails to establish an element of the cause of

action, summary judgment in favor of the defendant is proper. 

Pyne, 129 Ill. 2d at 358.

     An order granting summary judgment will be reversed if the

pleadings, depositions, admissions, exhibits, and affidavits on

file show that a genuine issue of material fact existed or if the

judgment was incorrect as a matter of law.  Quinton v. Kuffer, 221

Ill. App. 3d 466, 471 (1991).  The disposition of a summary

judgment motion is not discretionary and the standard of review is

de novo.  Quinton, 221 Ill. App. 3d at 471.

     In granting summary judgment in favor of CASA of Du Page

County on the plaintiff's claim for breach of contract, the trial

court ruled that the amendment to the contract was unenforceable in

that it was not supported by consideration.  The trial court found

that the amendment to the contract provided additional compensation

to the plaintiff based on her performance of duties which she was

already obligated to perform under the original contract.  The

plaintiff argues that the trial court erred in determining that the

amendment to the contract was not supported by consideration.

     To support a modification of an agreement, there must be

consideration.  De Fontaine v. Passalino, 222 Ill. App. 3d 1018,

1028 (1991).  Valuable consideration for a contract consists of

some right, interest, profit, or benefit accruing to one party, or

some forbearance, detriment, loss, or responsibility given,

suffered, or undertaken by the other.  De Fontaine, 222 Ill. App.

3d at 1028.  A promise to do something which one is already

obligated to do is no consideration and creates no new obligation. 

Moehling v. W.E. O'Neil Construction Co., 20 Ill. 2d 255, 266

(1960).

     Under the amendment to the contract, the parties agreed that

if the plaintiff's total compensation from CASA of Du Page County

for 1994 did not total $50,000, the plaintiff would be entitled to

an additional $16,984 from the sums actually received during 1995

and 1996 from the NCASAA grant awarded to CASA of Du Page County

during 1994.  The amendment to the contract then provided for a

payout schedule through 1995 and ending in January 1996 for payouts

totaling $16,984.

     Under the amendment to the contract, the plaintiff would have

received a benefit in that she would have been entitled to an

additional $16,984 from CASA of Du Page County which was not due

her under the original contract (see our discussion below regarding

what was due the plaintiff under the original contract).  However,

CASA of Du Page County would have received nothing in return except

for the plaintiff's continued performance of her original contract

through December 31, 1994, which she was already obligated to do. 

Consequently, we conclude that the trial court properly found that

there was no consideration for the amendment to the contract (see

Moehling, 20 Ill. 2d at 266) and that since there was no

consideration for the amendment to the contract, the amendment to

the contract was unenforceable.

     The plaintiff argues that, even if the amendment to the

contract was unenforceable, she is entitled to the relief sought in

her pleadings based on the original contract.  We disagree.

     The original contract provides that the plaintiff is entitled

"to receive as compensation an amount equal to fifty (50) percent

of the total gross receipts donated, given and/or granted to CASA

of Du Page County[] for the period beginning January 1, 1994 and

ending December 31, 1994, up to an amount not to exceed $50,000." 

The plaintiff argues that, under the original contract, she was

entitled to 50% of the entire $75,000 NCASAA grant, or $37,500. 

However, CASA of Du Page County was not granted $75,000 "for the

period beginning January 1, 1994 and ending December 31, 1994." 

Rather, it was granted $75,000 for a two-year period, payable in

quarterly installments beginning in July 1994 and ending in June

1996.  Therefore, under the original contract, the plaintiff was

not entitled to 50% of the entire $75,000 NCASAA grant.  Instead,

she was entitled to 50% of that portion of the NCASAA grant which

was granted "for the period beginning January 1, 1994 and ending

December 31, 1994."

     A review of the record reveals that, under the original

contract, the plaintiff was actually overpaid.  During the period

beginning July 1, 1994, and ending December 31, 1994, NCASAA

disbursed $30,000 to CASA of Du Page County from grant funds. 

During that same period, CASA of Du Page County paid the plaintiff

$26,090.55 as total compensation.  Of this amount, $20,516 was paid

by CASA of Du Page County from the funds received from the NCASAA

grant.  However, under the original contract, the plaintiff was

only entitled to 50% of $30,000 (the funds CASA of Du Page County

received from the NCASAA grant during 1994), which is $15,000. 

Therefore, as the plaintiff was actually overpaid in the amount of

$5,516, CASA of Du Page County did not breach its contract with the

plaintiff.  Accordingly, the trial court properly granted summary

judgment in favor of CASA of Du Page County.

     Since we have determined that the trial court properly granted

summary judgment in favor of CASA of Du Page County on this basis,

we need not address the plaintiff's arguments that the defenses of

impossibility of performance and mistake of fact were not available

to CASA of Du Page County.

     We turn now to the issue of whether the trial court properly

granted summary judgment in favor of Picchietti.  However, before

reaching the merits of this issue, we note that the plaintiff has

misrepresented the record on appeal.  In both her original and

amended statement of facts, the plaintiff stated that Picchietti

did not file an answer to the amended complaint.  The plaintiff

argues that Picchietti's alleged failure to file an answer operates

as an admission of the facts alleged in the complaint.  However,

our review of the record reveals that Picchietti did, in fact, file

an answer to the amended complaint on July 13, 1995, which is

included in the record on appeal.  Moreover, the plaintiff's third

amended appendix to her brief demonstrates her awareness that

Picchietti filed an answer and that the answer is included in the

record on appeal.  Based on the plaintiff's misrepresentation of

the record on appeal, counsel for CASA of Du Page County and

Picchietti has asked this court to impose sanctions under Supreme

Court Rule 375(b) (155 Ill. 2d R. 375(b)).  While we certainly do

not want to encourage such misrepresentation of the record on

appeal, we decline to impose sanctions in the present case.

     We will now address the issue of whether the trial court

properly granted summary judgment in favor of Picchietti on the

plaintiff's claim for tortious interference with an existing

contract (count II).  The plaintiff argues that the trial court

erred in granting summary judgment in favor of Picchietti because

a genuine issue of material fact exists as to Picchietti's motives

in contacting NCASAA and because she alleged sufficient facts to

state a cause of action for tortious interference with an existing

contract.

     The elements necessary to state a cause of action for tortious

interference with an existing contract are (1) the existence of a

valid and enforceable contract between the plaintiff and another;

(2) the defendant's awareness of this contractual relationship; (3)

the defendant's intentional and unjustified inducement of a breach

of the contract; (4) a subsequent breach by the other as a result

of the defendant's wrongful conduct; and (5) damages.  HPI Health

Care Services, Inc. v. Mt. Vernon Hospital, Inc., 131 Ill. 2d 145,

154-55 (1989).

     In the present case, we have already concluded that the trial

court properly found that the amendment to the contract was

unenforceable and that CASA of Du Page County did not breach the

original contract.  Thus, the plaintiff has failed to establish two

of the elements necessary to state a cause of action for tortious

interference with an existing contract (see HPI Health Care

Services, 131 Ill. 2d at 154-55), and summary judgment in favor of

Picchietti was proper (see Pyne, 129 Ill. 2d at 358).

     Since we have already concluded that the trial court properly

granted summary judgment in favor of Picchietti on this basis, we

need not address the plaintiff's arguments that the defense of

corporate officer qualified privilege was not available to

Picchietti and that a genuine issue of material fact existed as to

Picchietti's motive in contacting NCASAA.

     Finally, we turn to the issue of whether the trial court

properly granted NCASAA's motion to dismiss for lack of personal

jurisdiction.  The plaintiff asserts that in personam jurisdiction

over NCASAA exists because NCASAA has "transacted business" within

Illinois and because NCASAA is "doing business" within Illinois. 

See 735 ILCS 5/2--209(a)(1), (b) (West 1994).  NCASAA argues that

its conduct fits within neither of these categories and that, even

if it does, the exercise of in personam jurisdiction over it is

inconsistent with due process.

     The party who wishes to impose jurisdiction has the burden of

establishing a valid basis for jurisdiction over a nonresident

defendant.  R.W. Sawant & Co. v. Allied Programs Corp., 111 Ill. 2d

304, 310 (1986).  The essential inquiry on appeal is whether the

plaintiff has met this burden.  Professional Group Travel, Ltd. v.

Professional Seminar Consultants, Inc., 136 Ill. App. 3d 1084, 1089

(1985).

     Illinois courts may exercise jurisdiction over a nonresident

defendant if jurisdiction is proper under section 2--209 of the

Code of Civil Procedure (the Illinois long-arm statute) (735 ILCS

5/2--209 (West 1994)) and if the exercise of jurisdiction is

consistent with state and federal due process requirements. 

Rollins v. Ellwood, 141 Ill. 2d 244, 275 (1990).  However,

subsection (c) of the Illinois long-arm statute, effective

September 7, 1989, enables an Illinois court to exercise in

personam jurisdiction "on any other basis now or hereafter

permitted by the Illinois Constitution and the Constitution of the

United States."  735 ILCS 5/2--209(c) (West 1994).  Based on

subsection (c), an Illinois court may exercise personal

jurisdiction over a nonresident defendant as long as the exercise

of such jurisdiction offends neither federal nor state guarantees

of due process.  G.M. Signs, Inc. v. Kirn Signs, Inc., 231 Ill.

App. 3d 339, 342 (1992).

     Federal due process requires that, in order to exercise in

personam jurisdiction over a nonresident defendant, it is necessary

that the defendant have certain "minimum contacts" with the forum

state such that the maintenance of the suit there does not offend

" 'traditional notions of fair play and substantial justice.' " 

International Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed.

95, 102, 66 S. Ct. 154, 158 (1945), quoting Milliken v. Meyer, 311

U.S. 457, 463, 85 L. Ed. 278, 283, 61 S. Ct. 339, 343 (1940).  In

determining whether the trial court's exercise of in personam

jurisdiction over a nonresident defendant satisfies the

requirements of federal due process, a court must consider three

criteria:  (1) whether the nonresident defendant had minimum

contacts with the forum state such that it had fair warning that it

could be required to defend itself there; (2) whether the action

arose out of or related to the defendant's contacts with the forum

state; and (3) whether it is reasonable to require the defendant to

litigate in the forum state.  Burger King Corp. v. Rudzewicz, 471

U.S. 462, 471-77, 85 L. Ed. 2d 528, 540-44, 105 S. Ct. 2174, 2181-

84 (1985).

     For the exercise of personal jurisdiction over a nonresident

defendant to satisfy due process requirements, there must be some

act by which the defendant purposefully avails itself of the

privilege of conducting activities within the forum state, thereby

invoking the benefits and protections of its laws.  Hanson v.

Denckla, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298, 78 S. Ct. 1228,

1240 (1958).  Satisfaction of this requirement ensures that an

alien defendant will not be forced to litigate in a distant or

inconvenient forum solely as a result of random, fortuitous, or

attenuated contacts, or the unilateral act of a consumer or some

other third person.  Burger King, 471 U.S. at 475, 85 L. Ed. 2d at

542, 105 S. Ct. at 2183.  The minimum contacts and fair warning

requirements for the exercise of personal jurisdiction over a

nonresident defendant consistent with due process are satisfied if

a defendant has either purposefully directed its activities at

residents of the forum state, reached out beyond one state and

created continuing relationships and obligations with citizens of

the forum state, or purposefully derived benefits from its

activities within the forum state.  Burger King, 471 U.S. at 471-

74, 85 L. Ed. 2d at 540-41, 105 S. Ct. at 2181-83.

     Once it has been determined that a defendant's conduct

establishes minimum contacts with the forum state, these contacts

may be considered in light of several other factors to determine

whether the assertion of in personam jurisdiction comports with due

process.  Burger King, 471 U.S. at 476, 85 L. Ed. 2d at 543, 105 S.

Ct. at 2184.  The burden on the defendant, while always a primary

concern, will in an appropriate case be considered in light of

other relevant factors, including the forum state's interest in

adjudicating the dispute, the plaintiff's interest in obtaining

convenient and effective relief, the interstate judicial system's

interest in obtaining the most efficient resolution of

controversies, and the shared interest of the several states in

furthering fundamental social policies.  World-Wide Volkswagen

Corp. v. Woodson, 444 U.S. 286, 292, 62 L. Ed. 2d 490, 498, 100 S.

Ct. 559, 564 (1980).

     These standards of federal due process delineate " 'the outer

limits beyond which a State may not go to acquire jurisdiction over

nonresidents.' "  Rollins, 141 Ill. 2d at 271, quoting Cook

Associates, Inc. v. Lexington United Corp., 87 Ill. 2d 190, 197

(1981).  Illinois courts must ultimately look to the meaning of the

Illinois long-arm statute (735 ILCS 5/2--209 (West 1994)) and to

the due process guarantee of the Illinois Constitution (Ill. Const.

1970, art. I, §2).  Rollins, 141 Ill. 2d at 271-75.  The Illinois

long-arm statute and the Illinois Constitution may restrict the

power of Illinois courts to bring nonresidents before them to a

greater extent than do the federal due process clause and the

"minimum contacts" test recognized by the federal courts.  Rollins,

141 Ill. 2d at 271-75.  Under the state due process guarantees,

jurisdiction is to be asserted only when it is fair, just, and

reasonable to require a nonresident defendant to defend an action

in Illinois, considering the quality and nature of the defendant's

acts which occur in Illinois or which affect interests located in

Illinois.  Rollins, 141 Ill. 2d at 275.

     The facts relevant to this issue are as follows:  NCASAA is

located in, and incorporated under the laws of, the state of

Washington.  Since its founding, NCASAA's offices have been located

in Seattle, Washington.  Two of NCASAA's fifteen national board

members are Illinois residents.  NCASAA has no offices, employees,

property, or bank accounts in Illinois.

     NCASAA is a national membership organization for hundreds of

local CASA programs throughout the United States.  The CASA name is

owned by NCASAA.  It is a condition of the use of the CASA name and

logo that local CASA programs become members of NCASAA and agree to

abide by NCASAA's national standards.

     NCASAA members include numerous local CASA programs in all 50

states.  These local CASA programs are independently operated and

managed.  One state and 20 local CASA programs located in Illinois

are members of NCASAA.  Each local CASA program pays NCASAA a $90

annual membership fee.  NCASAA offers its members support services,

which may include training, technical assistance, and the right to

use certain trademarks and copyrighted materials.

     CASA of Du Page County is one of the local CASA programs in

Illinois which are members of NCASAA.  NCASAA did not found or

establish CASA of Du Page County.  No employee of NCASAA has ever

visited CASA of Du Page County.  In February 1993, two NCASAA staff

members attended the Illinois State CASA conference, where they met

and spoke with two representatives of CASA of Du Page County.

     NCASAA provides disbursement of funding received from the DOJ,

in the form of grants to local CASA programs.  In January of each

year, NCASAA distributes requests for proposals to the local CASA

programs.  These requests for proposals include grant application

forms.  Local CASA programs then send NCASAA grant application

proposals.  NCASAA distributes funds to as many local CASA programs

as qualify.  NCASAA sends a document entitled "Terms and Conditions

for National CASA Grants" to local CASA programs.  Local CASA

programs sign it and send it back to NCASAA.  Once NCASAA receives

it, NCASAA's chief executive officer signs it.  At this point,

NCASAA considers the local CASA programs to be grantees.  As a

result of receiving NCASAA grant funds, local CASA programs have

additional reporting requirements.

     Nine CASA programs located in Illinois applied for and

received NCASAA grants for 1994 and 1995.  These grants ranged in

amount from $27,000 to $75,000 and totaled $422,999.

     CASA of Du Page County was one of the nine CASA programs

located in Illinois that applied for and received NCASAA grants for

1994 and 1995.  On July 20, 1994, NCASAA entered into an agreement

to grant CASA of Du Page County $75,000, payable in quarterly

installments over the period beginning July 1, 1994, and ending

June 30, 1996.  CASA of Du Page County accepted the terms and

conditions of the grant.  NCASAA can terminate the grant and cease

making disbursements at any time during the grant period for

violations of these terms and conditions.  In January 1995, NCASAA

prohibited CASA of Du Page County from paying any portion of the

NCASAA grant funds to the plaintiff when she was no longer

performing services on behalf of CASA of Du Page County.

     During 1994 and 1995, NCASAA received charitable contributions

from 23 individuals in Illinois, totaling $1,245.

     Applying the Illinois long-arm statute and the state and

federal due process requirements to the facts of the present case,

we conclude that the plaintiff has met her burden (see Professional

Group Travel, 136 Ill. App. 3d at 1089) of showing that the

exercise of jurisdiction over NCASAA would be fair, just, and

reasonable under the relevant circumstances (see Rollins, 141 Ill.

2d at 275) and that NCASAA has sufficient contacts with Illinois to

satisfy due process (see International Shoe, 326 U.S. at 316, 90 L.

Ed. at 102, 66 S. Ct. at 158).

     By its activities outlined above, NCASAA has reached out

beyond its home state and created continuing relationships and

obligations with Illinois residents.  See Burger King, 471 U.S. at

471-74, 85 L. Ed. 2d at 540-41, 105 S. Ct. at 2181-83.  In

addition, NCASAA has purposefully derived benefits from its

activities within Illinois, such as membership dues from local CASA

programs in Illinois and contributions from Illinois citizens.  See

Burger King, 471 U.S. at 471-74, 85 L. Ed. 2d at 540-41, 105 S. Ct.

at 2181-83.  Hence, its contacts with Illinois cannot reasonably be

characterized as random, fortuitous, or attenuated.  See Burger

King, 471 U.S. at 475, 85 L. Ed. 2d at 542, 105 S. Ct. at 2183. 

The record demonstrates that NCASAA's contacts with Illinois are

sufficient to make it foreseeable that it might reasonably be haled

into court in Illinois.  See Burger King, 471 U.S. at 471-77, 85 L.

Ed. 2d at 540-44, 105 S. Ct. at 2181-84.  In addition, NCASAA's

contacts within Illinois are sufficiently related to the cause of

action against them and, at least in part, gave rise to it.  See

Burger King, 471 U.S. at 471-77, 85 L. Ed. 2d at 540-44, 105 S. Ct.

at 2181-84.  Therefore, the trial court erred in finding that it

lacked in personam jurisdiction over NCASAA.

     Based on our conclusion that NCASAA was subject to in personam

jurisdiction, we need not address the plaintiff's argument that

NCASAA generally appeared when CASA of Du Page County submitted

Piraino's affidavit to the trial court.

     For the foregoing reasons, the judgment of the circuit court

of Du Page County granting CASA of Du Page County and Picchietti's

motion for summary judgment is affirmed; the judgment granting

NCASAA's motion to dismiss for lack of personal jurisdiction is

reversed; and the cause is remanded for further proceedings

consistent with this decision.

     Affirmed in part and reversed in part; cause remanded.

     BOWMAN and RATHJE, JJ., concur.