In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3119

LUIS VEGA,

*Plaintiff-Appellant,*

*v.*

NEW FOREST HOME CEMETERY, LLC,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:15-cv-07464 — **Charles R. Norgle**, *Judge.*

ARGUED APRIL 18, 2017 — DECIDED MAY 15, 2017

Before EASTERBROOK, KANNE, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Luis Vega filed this suit alleging that his former employer, New Forest Home Cemetery, LLC ("New Forest"), by failing to pay him for his final two weeks of work, violated his right under the Fair Labor Standards Act of 1938, 29 U.S.C. § 206(b), to compensation at the minimum wage. The district court entered summary judgment in favor of New

Forest, reasoning that Vega had not exhausted the grievance procedure specified by the collective bargaining agreement between New Forest and the union representing its workforce before he filed suit. R. 25. Because the collective bargaining agreement did not clearly and unmistakably waive Vega's right to pursue his FLSA claim in a judicial forum, we reverse.

## I.

For purposes of reviewing the court's summary judgment decision, we recite the facts in the light most favorable to Vega. *E.g.*, *Thompson v. Holm*, 809 F.3d 376, 378 (7th Cir. 2016).

Vega worked for New Forest as a seasonal employee from May 2010 to June 2015. His employment was conditioned upon membership in the Service Employees International Union (the "union"), and he was therefore subject to the terms of a collective bargaining agreement between the union's local and New Forest. Article VIII of that agreement sets forth a mandatory four-step procedure culminating in arbitration to resolve employee grievances.[1] Section 8.1 of the agreement defines "grievance" to include "a claim or dispute concerning pay, hours[,] or working conditions or the interpretation or application of this Agreement."

---

[1]    The process, outlined in section 8.2 of the agreement, entails (1) an informal discussion of the grievance among the employee, his union steward or representative, and the employee's supervisor; (2) submission of the grievance in writing to the employer by the employee, with a copy to the union; (3) an effort by the employer and the union's business representative to adjust the grievance; (4) arbitration on the demand of either the employer or the union.

New Forest terminated Vega from its employ on June 3, 2015. At the time of his discharge, Vega was owed compensation for roughly 54 hours of work in the preceding two weeks. New Forest did not tender a final paycheck to Vega for the wages owed to him, purportedly because it discovered that Vega lacked a valid Social Security number and it did not know how to lawfully make payment to him without such a number.

The parties dispute whether Vega made efforts to initiate a grievance regarding his final paycheck in accordance with the collective bargaining agreement. Vega avers that he did. He has submitted a declaration indicating that he raised the matter with his union steward, Arzaius Lander, who told him to contact Charles Jones, a union representative with the local bargaining unit. Vega represents that he attempted to reach Jones by telephone and left messages with his office, but to no avail. Lander and Jones have both submitted affidavits denying that Vega ever sought the union's assistance with his unpaid wages.

Vega, having concluded that any further attempts to pursue the grievance process would be futile, instead filed suit in the district court. Count I of Vega's complaint asserts that New Forest, in failing to pay him the wages owed for his last two weeks of work, has violated section 6(b) of the FLSA, which requires employers to pay an employee engaged in interstate commerce no less than the federal minimum wage (specified in section 6(a) of the statute) for his work. 29 U.S.C. § 206(b). Counts II and III assert pendent state claims for violation of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.*, and for breach of contract.

New Forest promptly moved to dismiss the suit because Vega had not exhausted the grievance procedure specified in the collective bargaining agreement for any dispute about wages, and the district court ultimately entered summary judgment against Vega on that basis[2] as to his FLSA claim. R. 25. Although it recognized that Vega was suing to enforce his rights under the FLSA as opposed to the collective bargaining agreement, the court believed it to be the "generally established" rule that a union member "must follow the [collective bargaining] agreement's established grievance procedures before [he] can bring a lawsuit." R. 25 at 3 (collecting cases). The court was willing to assume, in light of Vega's representation that he attempted to reach Jones by telephone on multiple occasions, that he had followed the first step of the grievance process (contacting the union) as set forth in the collective bargaining agreement. R. 25 at 3. But the court found Vega's account insufficient to establish that he had otherwise exhausted his contractual remedies or that his efforts to do so were frustrated by the union. R. 25 at 3. The court entered judgment in favor of New Forest on that basis, and relinquished jurisdiction over Vega's state and common law claims. R. 25 at 3–4.

## II.

Our review of the district court's summary judgment decision is, of course, de novo. *E.g.*, *Madison Mut. Ins. Co. v.*

---

[2]   The court converted New Forest's motion to dismiss into one for summary judgment in view of the affidavits and other materials beyond the complaint that both parties had submitted in connection with the motion. R. 25 at 1–2; *see* Fed. R. Civ. P. 12(d).

*Diamond State Ins. Co.*, 851 F.3d 749, 753 (7th Cir. 2017). The question posed is straightforward: Does the collective bargaining agreement require Vega to resolve his FLSA minimum wage claim through the specified grievance procedure, or does it allow him to ask a court to resolve that claim regardless of whether he has exhausted his contractual remedies?

The district court's determination that Vega's failure to exhaust the grievance procedure forecloses him from seeking relief in court presumes that because his complaint is about New Forest's failure to pay him, and the collective bargaining agreement establishes a grievance procedure for a dispute over pay, he is invariably required to use that contractual procedure regardless of whether his claim sounds in contract or in statute. The collective bargaining agreement between the union and New Forest indeed does address the minimum rate of pay owed to seasonal employees like Vega (sections 3.2 and 3.3), sets out a mandatory grievance procedure to resolve disputes with the employer (section 8.2), and defines grievances to include disputes over pay, hours, or working conditions (section 8.1). If Vega's claim were one relying on his substantive rights under the collective bargaining agreement, there is no question that he would have to exhaust his contractual remedies by pursuing a grievance or, in the alternative, demonstrate why futility or one of the other recognized exceptions to exhaustion should relieve him of that obligation. *E.g.*, *McCoy v. Maytag Corp.*, 495 F.3d 515, 524–25 (7th Cir. 2007); *McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 616–17 (7th Cir. 2001).

But Vega has statutory as well as contractual rights, and the district court did not appreciate the distinction between those

categories of rights vis-à-vis his obligation to resort to the grievance procedure. In opposing New Forest's motion to dismiss his suit, Vega cited *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 101 S. Ct. 1437 (1981), for the propositions that an employee's rights under the FLSA are independent of his rights under a collective bargaining agreement, *id.* at 737, 745, 101 S. Ct. at 1443, 1447, and that one's rights under the FLSA cannot be waived by contract, *see id.* at 740, 745, 101 S. Ct. at 1444–45, 1447. R. 23 at 4–5. The former proposition is the one that is relevant here. No one is suggesting that Vega's union purported to negotiate away his FLSA rights in the collective bargaining agreement. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S. Ct. 3346, 3354 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral rather than a judicial forum."). What New Forest argues is that the collective bargaining agreement, by establishing a grievance procedure for disputes over pay, compels Vega to use that grievance procedure to resolve his FLSA claim. *Barrentine* is neither the Supreme Court's most recent nor most pertinent decision on that question. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 34–35, 111 S. Ct. 1647, 1656–57 (1991) (noting that *Barrentine* and similar cases did not resolve question of whether employee may be contractually obligated to arbitrate statutory claims).[3] But it does make clear that an employee's

---

[3]   *Barrentine* considered whether an employee who, unlike Vega, already had exhausted the specified grievance procedure as to a contractual

(continued...)

statutory rights are distinct from his contractual rights and as such must be analyzed separately with respect to his right to enforce them in court. *See Barrentine*, 450 U.S. at 734–37, 101 S. Ct. at 1441–43. This is the fundamental point that the district court overlooked.

Later cases have backed away from a reading of *Barrentine*, its predecessor, *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S. Ct. 1011 (1974), and its successor, *McDonald v. City of West Branch, Mich.*, 466 U.S. 284, 104 S. Ct. 1799 (1984), suggesting that a collective bargaining agreement can never restrict an employee's access to the courts for the purpose of enforcing his statutory rights. That trilogy of cases, the Supreme Court has now made clear, did not resolve the question whether an agreement to arbitrate statutory claims is enforceable against an aggrieved employee who wishes to pursue such claims in court rather than by way of a grievance and arbitration. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 263–64, 129 S. Ct. 1456, 1468–69 (2009) (citing *Gilmer*, 500 U.S. at 35, 111 S. Ct. at 1656–57). *14 Penn Plaza* answers this question in the affirmative, so long as the collective bargaining agreement explicitly states that an employee must resolve his statutory as well as his contractual rights through the grievance procedure delineated in the collective bargaining agreement. *Id.* at 258–59,

---

[3] (...continued)

minimum wage claim, was free to then pursue an FLSA claim in court based on the same facts and litigate the statutory claim *de novo*; the Court concluded that he could. 450 U.S. at 745–46, 101 S. Ct. at 1447. That holding does not answer the separate question of whether an employee may bypass the grievance procedure altogether and proceed directly to court on his statutory claim. *See Gilmer*, 500 U.S. at 35, 111 S. Ct. at 1657.

274, 129 S. Ct. at 1465, 1474. The language of the agreement in this regard must be clear and unmistakable in order for it to be enforced against an employee who wishes to bypass the contractual dispute resolution process in favor of a judicial forum. *Id.* at 274, 129 S. Ct. at 1474; *see Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 79–82, 119 S. Ct. 391, 396–97 (1998).

In this case, the district court did not consider whether the collective bargaining agreement requires Vega to resort to the grievance process when he is pursuing rights granted to him by the FLSA rather than the contract itself. Vega did not cite *14 Penn Plaza* to the district court, but, as we have noted, he did cite *Barrentine* in support of an argument that his statutory rights are distinct from his contractual rights and that the collective bargaining agreement cannot waive his rights under the FLSA. Although Vega's argument as framed was incomplete, if not inaccurate—*14 Penn Plaza* leaves no doubt that a collective bargaining agreement can restrict an employee's access to a judicial forum for purposes of resolving his statutory claim so long as it does so in clear and unmistakable terms—the argument was sufficient to alert the court that an employee's statutory rights are independent of his contractual rights and must be separately analyzed vis-à-vis the employee's obligation to invoke the contractual dispute resolution process. The court apparently did not consult *Barrentine*, which would have led it to *14 Penn Plaza*.

In sum, the particular question *14 Penn Plaza* requires us to answer is whether the collective bargaining agreement clearly and unmistakably requires Vega to use the grievance and

arbitration procedure to resolve his FLSA claim rather than skipping over that process and proceeding directly to court. It does not.

New Forest assumes that because the agreement defines a grievance to include disputes over pay, it necessarily requires statutory claims on the same subject to be submitted to the grievance process. Our decision in *Jonites v. Exelon Corp.*, 522 F.3d 721, 725 (7th Cir. 2008), shows why that assumption is mistaken. *Jonites* held that language in a collective bargaining agreement to the effect that "any dispute or difference aris[ing] between the Company and the Union or its members as to the interpretation or application of any of the provision of this Agreement or with respect to job working conditions" must be resolved through the contractual grievance procedure was not an "explicit" waiver of an employee's right to sue under the FLSA. *Id.* We noted that this generalized language was little different from that at issue in *Wright*, *supra*, wherein the Supreme Court had likewise concluded that there was no clear and unmistakable language in the agreement requiring claims under the Americans with Disabilities Act to be arbitrated. 522 F.3d at 725; *see Wright*, 525 U.S. at 80–82, 119 S. Ct. at 396–97. The Court in *Wright* pointed out that the arbitration clause's reference to "matters under dispute" could be thought to mean matters disputed under the contract rather than under any statute; and there was no provision elsewhere in the contract explicitly incorporating statutory anti-discrimination provisions. *Id.* at 80–81, 119 S. Ct. at 396–97. By contrast, the contractual language at issue in *14 Penn Plaza* explicitly incorporated a variety of statutory anti-discrimination provisions into the agreement and provided that "[a]ll such claims shall be subject

to the grievance and arbitration procedure … as the sole and exclusive remedy for violations." 556 U.S. at 252, 129 S. Ct. at 1461. That language, the Court concluded, amounted to an explicitly-stated agreement to arbitrate statutory claims. *Id.* at 258–59, 129 S. Ct. at 1465.

Here, by contrast, nothing in the language of the collective bargaining agreement clearly and unmistakably requires an employee to resolve a statutory claim through the grievance procedure. Although section 8.1 of the agreement defines a grievance to include a claim or dispute "concerning pay, hours[,] or working conditions or the interpretation or application of this Agreement," this could be thought to mean a claim over the requirements of the contract itself rather than one about what the FLSA requires. *See Wright*, 525 U.S. at 80–81, 119 S. Ct. at 396–97. Indeed, that is the most natural reading of the agreement, given that nowhere in Article VIII or, for that matter, anywhere else in the agreement is there even a reference to the FLSA.[4] Under no sense of the phrase "clear and unmistakable" can the agreement be read to compel an employee to resolve his rights under FLSA through the grievance process.

Consequently, there was no need for Vega to exhaust his contractual remedies. He was free to file suit regardless of whether he first pursued a grievance and did so through each

---

[4] The agreement's one and only mention of a federal statute is found in section 6.4, which addresses absenteeism. That provision concludes with a disclaimer that "[n]othing in this Agreement is meant to conflict with the Family and Medical Leave Act."

of the four steps delineated by the collective bargaining agreement.

### III.

The district court erred in granting summary judgment to New Forest. Absent clear and unmistakable language to the contrary in the collective bargaining agreement, nothing precluded Vega from filing suit to enforce his rights under the Fair Labor Standards Act. The judgment is REVERSED, and the case is REMANDED to the district court for further proceedings.