In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-4085

CEDRIC J. SMITH,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 4:14-cv-4009 — **Harold A. Baker**, *Judge.*

ARGUED APRIL 18, 2017 — DECIDED JUNE 23, 2017

Before EASTERBROOK, KANNE, and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge.* Cedric Smith brought suit against the federal government under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq.*, for injuries he sustained when he fell off a stool at the federal courthouse in Rock Island, Illinois. Smith relies on the doctrine of res ipsa loquitur to impute negligence to the government. The district court concluded that Smith had not made a showing sufficient to trigger the res ipsa loquitur

inference of negligence. R. 12. We find to the contrary and reverse and remand for further proceedings.

**I.**

As the case was decided on summary judgment, we take the facts in the light most favorable to Smith. *E.g., Vega v. New Forest Home Cemetery, LLC,* 856 F.3d 1130, 1131 (7th Cir. 2017).

On the morning of January 18, 2013, Smith was transported from the Rock Island County Jail to the U.S. District Courthouse in Rock Island to be arraigned on a federal weapons charge. Following the arraignment before Judge Darrow, deputy U.S. marshals took Smith to an interview room so that he could meet with his appointed counsel to discuss the case.

The U.S. Marshals Service maintains two secure attorney interview rooms in the courthouse where lawyers may confer with clients who are in the government's custody. The Marshals Service inspects the furniture and equipment in the rooms on a weekly basis. The room to which Smith was taken is divided in half by a wall with a large screened opening that enables the lawyer sitting on one side of the screen to speak with his (detained) client sitting on the other. On the detainee's side of the room there is a metal stool attached to the wall by means of a swing-arm that permits the stool to be positioned in front of the wire screen or moved out of the way to accommodate a detainee in a wheelchair. The Marshals Service controls access to the room, escorting a detainee like Smith into his side of the room and separately buzzing the attorney into the other half of the room by means of an electronic lock. Typically, a detainee's handcuffs are removed when he is brought into the room, but his leg irons are left in place.

According to Smith, when he entered the interview room and sat down on the stool (which was already positioned in front of the screen), the stool "broke" and tilted backwards, with the front of the stool rising and the back descending, causing him to fall to the floor and strike his head. As he looked up from the floor at the underside of the stool, he could see that there were bolts missing. When he tried to balance himself on the stool as he lifted himself from the floor, it wobbled again.

Smith's attorney summoned a court security officer to help Smith, and he was sent back to the Rock Island County Jail with instructions that he be seen immediately by the jail nurse. When the nurse examined Smith and noted that his speech was slurred, she arranged for him to be taken to the emergency room at a local hospital. There he was treated for a stroke. By his own account, Smith continues to suffer a variety of adverse effects from the incident, including weakness on the left side of his body, difficulty speaking, headaches, and memory impairment.

Smith avers that when he returned to the Rock Island courthouse at a later date and used the same interview room, he examined the stool and found that it had been welded into place. The stool no longer wobbled.

Smith filed an administrative tort claim against the Marshals Service alleging that the stool was broken on January 18, 2013, and that he had fallen and struck his head as a result. That claim was denied.

Smith then brought suit against the government under the FTCA.[1] The district court recruited counsel to represent him pro bono. Smith asserted multiple claims below, but the sole claim that he pursues on appeal is one of ordinary negligence. That claim is premised on the theory that the government breached the duty of care that it owed to Smith to maintain reasonably safe premises at the courthouse and in particular to keep the stool in the interview room in a condition safe for use. Smith relied on the doctrine of res ipsa loquitur to impute negligence to the government. Smith reasoned that the government (through the Marshals Service) controlled access to the room; that it inspected the equipment in the room and was responsible for maintenance of that equipment, including the stool; and that the stool did not function as intended when it caused him to fall to the floor. These circumstances, Smith asserted, supported an inference that negligence on the part of the government was the cause of the mishap.

Judge Baker, however, was not convinced that the facts warranted resort to the res ipsa loquitur inference of negligence. He noted that the ill-fated conference between Smith and his counsel took place at approximately 11 a.m.; consequently, "[i]t is possible that others could have damaged the seat earlier that day or in the days prior. It is also possible that [Smith] could have, through inadvertence or otherwise, damaged the seat himself." R. 12 at 8–9. For that matter, the judge noted, Smith might have simply tilted backward and

---

[1] Smith initially named the U.S. Attorney General and the Marshals Service as defendants, but the district court ordered the United States to be substituted as the appropriate defendant. R. 9 at 2 ¶ 2.

fallen off the stool without the stool having malfunctioned in any way. *Id.* at 9. In sum, the facts did not support an inference that negligence on the part of the government was the only explanation for the fall. *Id.*

## II.

We review the district court's summary judgment decision de novo. *E.g.*, *Vega*, *supra*, 856 F.3d at 1132. As we explain below, because the evidence that Smith presented to the court was sufficient to meet the criteria for application of the res ipsa loquitur doctrine, a factfinder could infer that the government was negligent. The decision to enter summary judgment in the government's favor was thus in error.

The FTCA incorporates the substantive law of the state where the alleged tort occurred. *E.g.*, *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). Thus, Smith's negligence claim is subject to Illinois law, which requires him to establish that the government owed him a duty of care, that it breached that duty, and that the breach proximately caused his injuries. *See, e.g.*, *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 270 (Ill. 2007).

There is no dispute that the government owed Smith, as a detainee in its custody, a duty of care. The government concedes that "it owes a duty to provide pretrial detainees, like Smith, with a reasonably safe environment and to maintain the premises in a reasonably safe condition." Government Brief 13. The focus of the parties' dispute is on whether Smith has presented enough evidence to permit the inference that the government breached its duty to Smith with respect to the stool.

Lacking direct evidence of negligence on the government's part, Smith resorts to the doctrine of res ipsa loquitur ("the thing speaks for itself"). *See Blasius v. Angel Auto., Inc.*, 839 F.3d 639, 649 (7th Cir. 2016). In circumstances where such proof is primarily within the knowledge and control of the defendant, this doctrine permits the plaintiff to resort to a particular type of circumstantial evidence as support for the notion that the defendant was negligent. *See Smith v. Eli Lilly & Co.*, 560 N.E.2d 324, 339 (Ill. 1990); *Metz v. Central Ill. Elec. & Gas Co.*, 207 N.E.2d 305, 307 (Ill. 1965); *Aguirre v. Turner Constr. Co.*, 501 F.3d 825, 831 (7th Cir. 2007) (Illinois law). To wit, if the plaintiff can show that he was injured (1) in circumstances that ordinarily would not occur absent negligence, (2) by an agency or instrumentality within the defendant's management or control, then res ipsa loquitur permits the factfinder to infer that the defendant was negligent. *Metz*, 207 N.E.2d at 307; *see also Heastie v. Roberts*, 877 N.E.2d 1064, 1076 (Ill. 2007); *Gatlin v. Ruder*, 560 N.E.2d 586, 590–91 (Ill. 1990). Other evidence may point to a contrary conclusion, and proof sufficient to trigger the res ipsa loquitur doctrine permits but does not compel the inference that the defendant was negligent. *Metz*, 207 N.E.2d at 307. But if Smith's proof satisfies the criteria for res ipsa loquitur, then he has shown enough to preclude summary judgment on the question of negligence. *See id.* (adopting view that "the inference, or presumption, [of negligence] does not simply vanish or disappear when contrary evidence appears, but remains to be considered with all the other evidence in the case and must be weighed by the jury against the direct

evidence offered by the party charged"); *see also Imig v. Beck*, 503 N.E.2d 324, 329–30 (Ill. 1986).[2]

The evidence satisfies the first of the two criteria. A properly functioning stool of the type described should not wobble so as to tip its occupant onto the floor. But, on Smith's representation of the facts, wobble it did. The scenario Smith has described bespeaks a malfunctioning stool, and the malfunction—which would pose a hazard to anyone using the stool—points to negligence. *See Robinson v. Peoples Gas Light & Coke Co.*, 64 N.E.2d 556 (Ill. App. Ct. 1946) (abstract of op.) (res ipsa loquitur applied where customer in defendant's sales room invited to sit in folding chair and chair collapsed when customer sat down; on subsequent inspection, rivet on side of chair observed to have come out of slot); *Hunter v. Alfina*, 251 N.E.2d 303, 305–06 (Ill. App. Ct. 1969) (summarizing facts of *Robinson* and collecting cases in which res ipsa loquitur has been applied to collapse of seating devices in business establishments).

---

[2] Although the government has contended that Smith must present additional evidence that it had notice of any problem with the stool, *see Schmid v. Fairmont Hotel Co.-Chicago*, 803 N.E.2d 166, 174 (Ill. App. Ct. 2003) (liability under rules of ordinary negligence requires some knowledge, actual or constructive, of danger complained of) (quoting *Prater v. Veach*, 181 N.E.2d 739, 741 (Ill. App. Ct. 1962)), the inference triggered by the res ipsa loquitur doctrine would include the proposition that the defendant had notice of the defective nature of the instrumentality that caused the plaintiff's injury. *See Higgins v. White Sox Baseball Club, Inc.*, 787 F.2d 1125, 1129 (7th Cir. 1986) (Illinois law); *DeBello v. Checker Taxi Co.*, 290 N.E.2d 367, 370 (Ill. App. Ct. 1972).

Judge Baker cited the possibility that Smith might simply have fallen from the stool without it having malfunctioned in any way; and the government pursues the same point on appeal. *See Britton v. Univ. of Chicago Hosps.*, 889 N.E.2d 706, 709 (Ill. App. Ct. 2008) ("if two reasonable inferences are deducible from the same facts, one of which comports with defendant's responsibility and the other is directly *contra* thereto, neither should be indulged to permit recovery by use of the doctrine of *res ipsa loquitur* … "); *Nickel v. Hollywood Casino-Aurora, Inc.*, 730 N.E.2d 1212, 1215 (Ill. App. Ct. 2000) (res ipsa loquitur does not apply where injury "can be as readily attributed to pure accident as to negligence"). Smith does not simply represent that he fell from the stool, a mishap that plausibly could be explained by him slipping off the stool due to his own misadventure as by the stool's malfunction. *Cf. id.* at 1213, 1215–16 (casino patron with difficulty walking and standing alleged that metal stool slid out from under her as she tried to sit down, causing her to fall to floor; she did not know what caused stool to slip away from her nor could she recall condition of stool). Smith avers that the stool wobbled and tipped him backwards. (His averment regarding missing bolts reinforces the notion that the stool was broken.) Certainly he could be wrong, and perhaps a factfinder might conclude that the stool did not, in fact, wobble.[3] But at this stage of the

---

[3] There is (disputed) testimony in the record that no one had fallen from the stool previously; that no detainee had ever complained about the stool posing a danger; and that the stool had never been observed in a state of disrepair. We also note that Smith's federal defender, when deposed, testified that shortly after Smith took a seat on the stool, he reared back

(continued...)

proceedings, we must credit Smith, who avers unequivocally that the stool in fact did wobble and that he was tipped onto the floor as a result. Contrary inferences would be for the factfinder to draw (or not) after a trial. *Maroules v. Jumbo, Inc.*, 452 F.3d 639, 646 (7th Cir. 2006).

The evidence also satisfies the control element of res ipsa loquitur. The stool was within a room maintained and controlled by the government. Access to the room is regulated by the Marshals Service and for obvious reasons is granted to a limited universe of individuals under its supervision. The government must be concerned not only that the room functions for its intended purpose (attorney-client conferences) but that the room is secured—in the sense that a detainee cannot escape from it; that an unauthorized person cannot access it from the outside (to help a detainee escape, to harm a detainee, or to leave a weapon or other contraband for the detainee); and that a detainee cannot in some way use the contents of the room to work mischief (to make a weapon, for example). Given such safety concerns, it comes as no surprise that the government admits that the Marshals Service regularly inspects the stool and the other equipment in the room. *Cf. Hunter*, 251 N.E.2d at 306 (distinguishing respective duties of

---

[3] (...continued)

slightly, his eyes widened, and he made a gurgling noise before falling to the floor; counsel had the impression that Smith was adjusting himself on the stool and lost his balance. The attorney's recollection is not necessarily inconsistent with Smith's account of what caused him to fall. But Smith had suffered a stroke prior to this incident, and the government cites the attorney's version as support for the notion that a stroke caused Smith to fall rather than the other way around.

care owed by owner of private home and proprietor of business establishment).

The government nonetheless argues, and the district court concluded, that the Marshals Service did not have literally *exclusive* control over the stool given that Smith and other detainees regularly used the room (and likely had done so on the day Smith was injured) and may themselves have been responsible for the alleged malfunctioning of the stool.

However, as the Illinois Supreme Court has recognized, the control criterion of the res ipsa loquitur doctrine is a flexible rather than a rigid standard. *Heastie*, 877 N.E.2d at 1076. "[T]he key question is whether the probable cause of the plaintiff's injury was one which the defendant was under a duty to the plaintiff to anticipate or guard against." *Id.* (collecting cases); *see also Nichols v. City of Chicago Heights*, 31 N.E.3d 824, 842 (Ill. App. Ct. 2015); *Aguirre*, 501 F.3d at 831 (citing *Lynch v. Precision Mach. Shop, Ltd.*, 443 N.E.2d 569, 573 (Ill. 1982)) .

If indeed the stool malfunctioned, as we have assumed based on Smith's account of events, then his was an injury that the government was under a duty to anticipate and guard against. The government maintains the room and the equipment therein, and admits that it inspects the equipment, including the stool, on a regular basis. A broken stool, regardless of the cause, would be the type of condition such inspections are aimed at discovering. Indeed, given the security concerns that a loose bolt, for example, might present in the wrong hands, the Marshals Service would have a strong incentive to check the stool to make sure it was secure.

The fact that a detainee is typically left alone to confer in private with his lawyer does not defeat the notion that the room—and the stool—remain within the control of the government even when a deputy marshal is not present. The stool does require a user to "operate" it in the way that a revolving door does, for example, such that a malfunction might just as likely be the result of negligence on the part of the user as opposed to the premises owner. *Cf. Britton*, 889 N.E.2d at 709 (pointing out that revolving door cannot operate itself and that injured user or previous user may have applied excessive force to door, causing door glass to shatter). When Smith was escorted into the interview room, the stool had already been placed in front of the screen; he simply had to sit down. The sort of malfunction that Smith has described is the kind of hazard that the government may be expected to guard against.

The evidence, in sum, meets the criteria for application of the res ipsa loquitur doctrine. The record would therefore permit the factfinder to infer negligence on the part of the government.

### III.

As there is a dispute of material fact as to whether the government was negligent, summary judgment was improper. The judgment is REVERSED, and the case is REMANDED to the district court for further proceedings consistent with this opinion.