NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 1, 2022
Decided March 28, 2022

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 21-2532

| | |
|---|---|
| DAVID STAVROPOULOS,<br>    *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 1:18-cv-01946 |
| UNITED STATES OF AMERICA,<br>    *Defendant-Appellee*. | Gary Feinerman,<br>*Judge*. |

**O R D E R**

David Stavropoulos sued the United States under the Federal Tort Claims Act, asserting that a Transportation Security Agency (TSA) agent struck his testicles during a pat-down search. After a bench trial, the district court concluded that Stavropoulos had not shown that the pat-down caused his injuries and entered judgment for the United States. On appeal, Stavropoulos argues that the district court improperly discredited his testimony, and that it should have credited his testimony over that of the government's witnesses. But he has not shown anything to suggest that the court clearly erred in its

credibility determination or its reliance on the testimony of the government witnesses, so we affirm.

I

A

In 2017, David Stavropoulos arrived at O'Hare International Airport less than an hour before his flight was scheduled to depart. In accordance with TSA's screening protocol, Stavropoulos entered a security scanner, which alerted Dominic Capone, a TSA screener, to an item near Stavropoulos's mid-section. To clear this alert, TSA protocol required that Stavropoulos be patted down. Capone asked Stavropoulos to empty his pockets, which held a crumpled dollar bill. Capone then advised Stavropoulos of the need to perform a pat-down search; Capone did not, however, give him all the advisements that TSA requires (such as informing the passenger that there is a need to touch a sensitive area of the body and that a private screening can be made available). While patting down Stavropoulos's legs, the agent twice made contact with Stavropoulos's testicles. Video shows Stavropoulos not visibly reacting until the second contact, when he expressed annoyance at Capone but did not express any pain or indicate that he was injured.

Stavropoulos then complained to two other TSA employees about the pat-down and asked to file a police report for assault. For the next thirty minutes, Stavropoulos waited calmly for officers to arrive, discussed the incident with the TSA employees and the police, and then filed a TSA incident report of the pat-down. At no point did Stavropoulos request medical attention, and the incident report does not mention any complaint of pain or injury. By the time Stavropoulos was cleared to fly, his flight had departed. After filing the report, Stavropoulos went from O'Hare to the emergency room at Weiss Memorial Hospital. There, both a physical examination and ultrasound revealed no evidence of testicular pain or trauma.

Over the next few years, Stavropoulos developed some urological issues. He saw several doctors, most prescribing over-the-counter pain medication and noting that his pain appeared to be neuropathic (originating in the nervous system), not due to trauma. In 2020, Stavropoulos underwent two pain-management procedures: a spermatic cord block (which numbs testicular nerves) and a cord denervation (which neutralizes the nerves unnecessary for testicular functioning). Stavropoulos felt significant improvement after the first procedure and resolution of his pain after the second.

B

After an unsuccessful complaint with TSA, Stavropoulos sued the United States under the Federal Tort Claims Act, 28 U.S.C. § 2674, alleging that Capone negligently injured him during the pat-down. The court acceded to the parties' request for a trial.

During a five-day bench trial, the district court heard testimony from Stavropoulos, several TSA employees, and several doctors. Stavropoulos testified that the pat-down contact with his testicles caused him "8-out-of-10-pain, [akin to] being stabbed" and that he continued to suffer excruciating pain for years afterward. He also testified that when filing the TSA incident report, he told the officers that he had been injured by the contact with his testicles.

TSA agents testified about the required pat-down procedures, noting that they saw nothing wrong with Stavropoulos's pat-down. Dr. Robert Nadler, the government's groin-trauma expert, testified that based on "Stavropoulos's minimal reaction" in the videos and the subsequent medical test results, the pat-down did not cause the pain or injury Stavropoulos complained of.

The district court entered judgment for the United States, holding that Stavropoulos failed to show that the pat-down caused his injuries, a required element of his negligence claim. The judge based this holding on the video evidence, emergency-room reports, and testimony of the government's witnesses, and held that Stavropoulos's testimony about the incident was not credible. Comparing Stavropoulos's testimony to the video evidence, the judge concluded that it would be "extremely difficult, if not impossible" to credit Stavropoulos's claims of severe pain during the pat-down. Additionally, the judge noted that the incident report reflected no claims of pain or injury, and that the emergency room examination immediately following his pat-down likewise revealed no testicular trauma.

II

Stavropoulos challenges the district court's conclusion that he failed to prove that the TSA pat-down caused his injuries, arguing that the court should have credited his testimony on this point over that of the government's witnesses. Illinois tort law governs the causation analysis because the incident occurred in Illinois, 28 U.S.C. § 1346(b)(1); see also *Smith v. United States*, 860 F.3d 995, 998 (7th Cir. 2017) ("The FTCA incorporates the substantive law of the state where the alleged tort occurred."), and in

Illinois, as part of the familiar elements of a negligence claim, a plaintiff must establish that the defendant was a proximate cause of the plaintiff's injury, see *Blood v. VH-1 Music First*, 668 F.3d 543, 546 (7th Cir. 2012). Proximate cause is a question of fact, see *id.*, which we review for clear error, *Buechel v. United States*, 746 F.3d 753, 756 (7th Cir. 2014).

Stavropoulos identifies several alleged errors in the district court's proximate cause analysis. We take each argument in turn.

A

Stavropoulos challenges the district court's finding that his testimony was not credible. A district judge's credibility determination is entitled to special deference because "[t]he district judge is in a much better position to evaluate credibility than we are." *United States v. Simon*, 937 F.3d 820, 829 (7th Cir. 2019). We can only reverse a district court's credibility finding because of clear error: that is, if the record as a whole leaves us with a "definite and firm conviction" of mistake. *Id.*

Stavropoulos has not shown how the record as a whole could do so; the district court relied on a mountain of evidence when it discounted Stavropoulos's testimony. The video evidence of both the pat-down and Stavropoulos's extended wait for other officers to arrive undermines his complaint that he felt pain akin to a stabbing and corroborates the district court's finding that he "hardly flinched" and showed no sign of experiencing pain. Stavropoulos said that his nonchalance could be explained by his high pain tolerance. But the district court appropriately credited Dr. Nadler's testimony that Stavropoulos would "have to be superhuman" to react as he did, given the pain Stavropoulos claimed to experience. Further, the court was entitled to find "highly probative" the fact that Stavropoulos's emergency-room examination and ultrasound revealed no signs of testicular trauma. Similarly, the court appropriately justified why it found "persuasive" Dr. Nadler's opinion that Stavropoulos's injuries could not have been caused by the pat-down. So, the district court did not clearly err in finding Stavropoulos's testimony about the incident not credible.

B

Stavropoulos also argues that the court ignored instances in which he says that he impeached the government's witnesses. But here too, he faces a high burden. Stavropoulos would have to show that the witnesses' errors made their testimony

"patently improbable" before we would disturb the district court's findings of the witnesses' credibility. *Gicla v. United States*, 572 F.3d 407, 414 (7th Cir. 2009). His impeachment of the government's witnesses does not suffice under this standard. Stavropoulos faults Capone for "admitting to lying under oath" in the district court. But the supposed lie is that Capone misstated that he, rather than another agent, operated the scanner before the pat-down. Stavropoulos also questions Dr. Nadler's understanding of the incident because, for one example, the doctor confused which pants pocket contained the crumpled dollar bill that Stavropoulos removed during his pat-down. But Stavropoulos provides only arguments about small inaccuracies, which do nothing to discredit the witnesses' testimony on the substantive issues of the case. See *Gicla,* 572 F.3d at 414 ("certain inconsistencies and vulnerabilities in the testimonies of the government's witnesses" do not "preclude[] the district court from crediting their opinions").

We have reviewed Stavropoulos's other arguments; none has merit. Stavropoulos asserts that the district court improperly credited Dr. Nadler's testimony because Dr. Nadler has not served as a plaintiff's expert before, proving his bias, and because he is not a "groin-trauma expert," but rather specializes in urological cancers. Stavropoulos also argues that the district court failed to credit his own doctors' testimony that the pat-down proximately caused his injuries. But none of Stavropoulos's arguments justifies reversing the district court's credibility determinations, because each argument calls for a reweighing of the facts on appeal, which we will not do. See *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1068 (7th Cir. 2013) (credibility determinations made during bench trials are reviewed for clear error).

AFFIRMED